# United States Court of Appeals
## For the First Circuit

No. 00-1775

MICHAEL SPIELMAN,

Plaintiff, Appellant,

v.

GENZYME CORP. and
GENZYME DEVELOPMENT CORP.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Boudin, Lynch, and Lipez, Circuit Judges.

John Peter Zavez, with whom Adkins, Kelson & Zavez, P.C.
were on brief, for appellant.
Michael T. Gass, with whom Paige Scott Reed and Palmer &
Dodge LLP were on brief, for appellees.

May 24, 2001

**LIPEZ, Circuit Judge.** Michael Spielman, the named plaintiff in a putative class action, appeals the district court's dismissal of his suit for lack of subject matter jurisdiction. The court found that the plaintiff's individual damages claim failed to satisfy the amount-in-controversy minimum set by 28 U.S.C. § 1332 for entry into federal court. The court also rejected the plaintiff's alternative argument that his claim for attorney's fees under Chapter 93A of the Massachusetts Consumer Protection Statute fulfilled the amount-in-controversy requirement because Massachusetts law allowed him to aggregate all of the fees anticipated by the class. We agree that Spielman does not meet the amount-in-controversy minimum and affirm the district court's dismissal of his suit.

## I.

In 1987, Michael Spielman, a New York resident, bought a limited partnership interest in Genzyme Clinical Partners, L.P. (GCP), which sought to develop a treatment for Gaucher's disease. At that time Genzyme Development Corporation (Genzyme Development), a subsidiary of Genzyme Corporation (Genzyme), was the general partner of GCP. As general partner, Genzyme Development was obligated by law and by the limited partnership agreement to issue annual federal and state tax schedules to the limited partners. No schedules were issued between 1987 and 1990. In 1990, the GCP limited partners approved the

sale of the partnership's assets to Genzyme in exchange for shares of common stock. As a result, GCP was liquidated.

This transaction had tax implications for Spielman and some of the other 190 GCP limited partners who lived outside of Massachusetts. Sometime after Genzyme bought GCP, the Massachusetts Department of Revenue determined that the sale and liquidation was a taxable event under state law. In 1993, the Department notified the former limited partners who had not filed 1990 Massachusetts tax returns that they owed state taxes on their share of the liquidation income. Spielman was assessed a tax of $10,820, which he did not pay. In 1995, the Department penalized Spielman for delinquent payment by doubling the amount he owed to $21,640.

On November 9, 1995, Spielman filed a class action in federal court on behalf of himself and similarly situated former GCP limited partners against Genzyme Development and Genzyme.[1] The complaint included claims of negligent misrepresentation, common law fraud, breach of fiduciary duty, and breach of contract. It alleged that Genzyme Development's failure to issue the required 1990 tax schedules for GCP caused Spielman and the other class members to incur Massachusetts tax liability. As a resident of New York suing a Massachusetts corporation, Spielman asserted diversity jurisdiction

---

[1] Genzyme Development ceased to exist in 1990, and Genzyme, as parent corporation, assumed its liability. Spielman's suit named both entities but proceeded against Genzyme alone.

-3-

under 28 U.S.C. § 1332, but did not specify a damages amount. At the time the suit was filed, § 1332(a) required that the "matter in controversy" exceed $50,000 for federal court jurisdiction to attach. See Act of Oct. 19, 1996, Pub. L. No. 104-317, 110 Stat. 3850 (amending 28 U.S.C. § 1332(a) so as to raise jurisdictional amount from $50,000 to $75,000).

Five days after filing the class action complaint, Spielman filed an appeal with the Massachusetts Appellate Tax Board to determine the taxes and penalty he owed for the GCP liquidation. On October 24, 1996, Genzyme filed a motion to dismiss for lack of subject matter jurisdiction, alleging that Spielman's damages fell below the required $50,000 minimum. In opposition to this motion, Spielman filed an affidavit on November 21, 1996 claiming $21,640 in "double taxes," $16,211.47 in interest, $11,246.48 in penalties, and $1,305 in accountant fees. The itemized damages totaled $50,402.95. The affidavit asserted, however, that Spielman's damages as of the date his complaint was filed were $61,673.77, though it did not explain the $11,270.82 discrepancy between that amount and the itemized total.

On December 12, 1996, the district court denied Genzyme's motion to dismiss for lack of subject matter jurisdiction, but stayed Spielman's action pending the state Tax Board's ruling on the amount of his tax liability. The court said: "This action . . . has been prematurely brought. After a review of the papers and pleadings, it

-4-

is not possible at this time to determine plaintiff's damages, as damages can be reasonably calculated only upon completion of the state administrative proceedings."

This stay remained in place for more than two years. Then at a February 8, 1999 status conference, Spielman told the court that the Tax Board had assessed his final tax liability at $10,820--the taxes he owed for GCP's liquidation, with no assessment of penalties or interest. Spielman also said that to achieve this result he had paid attorney's fees of $7,000 and accountant's fees of $1,305, for a total of $8,305. Spielman told the court he would consider whether the Tax Board's ruling meant that he could no longer meet the amount-in-controversy minimum. The next day, the court lifted the stay on Spielman's class action.

Five months later, on July 16, 1999, Spielman asked the court for leave to file an amended complaint. The amendment alleged no new facts, but added a claim under Chapter 93A of the Massachusetts Consumer Protection Act, which permits prevailing plaintiffs to recover attorney's fees as part of their damages award. Genzyme protested, arguing that Spielman's attempt to amend the complaint was untimely and a "transparent attempt to establish federal court jurisdiction where none exists." On September 22, 1999, the court granted Spielman's request to amend the complaint, saying that the court's December 1996 stay accounted for the delayed filing of the amendment.

On November 2, 1999, Genzyme renewed its motion to dismiss for lack of subject matter jurisdiction, claiming that the state Tax Board ruling established that Spielman had incurred at most $8,305 in damages.[2] In opposition to this motion, Spielman argued that his damages claim for attorney's fees under Chapter 93A should include the fees for the class, and that aggregating the fees to him would boost his claim over the $50,000 minimum. Spielman also urged the court to exercise supplemental jurisdiction over the other members of the class even if they individually failed to meet the amount-in-controversy requirement.[3] On May 5, 2000, the district court granted Genzyme's motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The court found that the Tax Board's ruling meant that the damages that Spielman alleged on the face of his original complaint failed to satisfy the jurisdictional minimum at the time that complaint was filed. The court also declined to exercise jurisdiction on the basis of Spielman's amended complaint, finding that

---

[2] While Spielman also claims as damages the $10,820 in taxes that he owed to Massachusetts, we think it inappropriate to treat as damages a tax liability that Spielman had to pay independently of Genzyme Development's alleged failure to provide the required tax schedule.

[3] On October 25, 1999, Spielman filed a motion to certify the suit as a class action. The district court did not rule on this motion. Nonetheless, the court properly treated the suit as a class action for purposes of the jurisdictional analysis. See Doucette v. Ives, 947 F.2d 21, 30 (1st Cir. 1991) ("During the period between the commencement of a suit as a class action and the court's determination that it may be so maintained, the suit should be treated as a class action.").

under Massachusetts law Chapter 93A anticipated the pro rata distribution of attorney's fees to members of the class for purposes of determining jurisdiction, rather than aggregation to the named plaintiff. Spielman appeals.

## II.

We review de novo the district court's dismissal for lack of subject matter jurisdiction. Coventry Sewage Assoc. v. Dworkin Realty Co., 71 F.3d 1, 3 (1st Cir. 1995). The facts pertinent to this appeal are undisputed. However, as the party seeking to invoke jurisdiction, Spielman has the burden of showing that he has met the statutory requirements. Id. at 4.

As we have noted before, competing interests are at stake when federal courts determine whether they may hear a case. Id.; 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3702 at 16 (1998). On the one hand, the Constitution limits the jurisdiction of federal courts, see U.S. Const. Art. III, and Congress has further narrowed our jurisdiction by periodically increasing the amount-in-controversy minimum for diversity cases. This means that we have a responsibility to police the border of federal jurisdiction. Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc., 60 F.3d 350, 352 (7th Cir. 1995). On the other hand, determining whether a case belongs in federal court should be done quickly, without an extensive fact-finding inquiry. "To make the

'which court' decision expeditiously and cheaply, a judge must simplify the inquiry. . . ." Id.

With these competing interests in mind, we apply the Supreme Court's longstanding test for determining whether a party has met the amount-in-controversy minimum. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938) states that:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

Id. at 288-89 (footnotes omitted). Under St. Paul, a plaintiff's general allegation of damages that meet the amount requirement suffices unless questioned by the opposing party or the court. See Dep't of Recreation and Sports v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991). Once the damages allegation is challenged, however, "the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." Id.; see also Barrett v. Lombardi, 239 F.3d 23, 30-31 (1st Cir. 2001). "A party may meet this burden by amending the pleadings or by submitting affidavits." Dep't of Recreation and Sports, 942 F.2d at 88.

-8-

Courts determine whether a party has met the amount-in-controversy requirement by "looking to the circumstances at the time the complaint is filed." Coventry Sewage, 71 F.3d at 4; Wright & Miller § 3702 at 28-29 n.31. Thus St. Paul's legal certainty standard does not mean that jurisdiction is ousted because of the eventual "inability of plaintiff to recover an amount adequate to give the court jurisdiction," or because "the complaint discloses the existence of a valid defense to the claim." Coventry Sewage, 71 F.3d at 5. In addition, "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." St. Paul, 303 U.S. at 289-90. On the other hand, and importantly for this case,

> if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount . . . the suit will be dismissed.

Id. at 289 (emphasis added).

After Genzyme challenged his damages allegation, Spielman tried in two ways to meet the burden of showing that his claim met the legal certainty test for the amount-in-controversy minimum. First, he submitted an affidavit itemizing $50,402.95 in damages and claiming total damages of $61,673.77. Spielman says that the damages allegations in the affidavit meet St. Paul's legal certainty test

- 9 -

because they represent his good-faith claim at the time he filed suit. According to Spielman's theory, the state Tax Board's ruling that his tax liability was only $10,820 was a "subsequent event" under St. Paul, and thus unrelated to the facts as they existed at the time he filed his complaint. Alternately, Spielman sought to meet the amount-in-controversy minimum by amending his complaint to include a claim for attorney's fees under Chapter 93A. He argues that the fees claim boosts his damages allegation over $50,000 because it encompasses not only the fees anticipated for his individual case, but also the fees that will be generated on behalf of other members of the class. We address each of Spielman's arguments in turn.

## III.

A. Spielman's Individual Damages Claim

Invoking St. Paul, Spielman argues that the Tax Board's ruling was a "subsequent event" that cannot be factored into the court's amount-in-controversy analysis. Here Spielman attempts to draw an analogy between the facts in this case and those in our own precedent, Coventry Sewage Assoc. v. Dworkin Realty Co., 71 F.3d 1 (1st Cir. 1995). In Coventry Sewage, the defendant refused to pay the plaintiff for sewer-main usage after a service-fee increase. The plaintiff sued for approximately $75,000, basing that amount on invoices provided by the local county water authority. After the complaint was filed, the water authority discovered that it had misread

the defendant's water meters.  Correction of this error left less than $10,000 in dispute.  <u>Id.</u> at 3.

We found that the water authority's correction of its meter-reading error was a "subsequent event" under <u>St. Paul</u>.  In summarizing the rationale for this holding, we said:

> In the instant case, an independent third party with otherwise no connection to the case made an apparently non-obvious error so that the amount-in-controversy at the time of filing, in fact, exceeded the jurisdictional minimum. Coventry had no reason to know that its claimed amount of damages was in error.  Moreover, the reduction of the amount in controversy resulted from acts occurring wholly after the action commenced.

<u>Id.</u> at 8.  Spielman argues that we should exercise jurisdiction here based on a similar rationale.  We decline.

<u>Coventry Sewage</u> is inapposite.  Unlike the water authority in <u>Coventry Sewage</u>, the Tax Board did not reduce an initial assessment of the damages amount that exceeded the jurisdictional minimum.  Here there was considerable question at the outset as to whether Spielman's damages amount met the jurisdictional minimum--a question that the trial judge raised but deferred resolution of when he issued the stay. Spielman included as damages $10,820 in taxes that he owed independently of any act or omission by Genzyme Development, and he boosted his claim over the $50,000 jurisdictional minimum by adding $11,270.82 from a source he never identified.  The state Tax Board ruling thus confirmed what had been apparent earlier: Spielman's

- 11 -

attempt to meet the jurisdictional minimum was in vain from the beginning.[4]  B. Spielman's Chapter 93A Attorney's Fees Claim

Spielman argues that his attorney's fees should be included as part of his anticipated damages.  Normally, attorney's fees are excluded from the amount-in-controversy determination because "the successful party does not collect his attorney's fees in addition to or as part of the judgment." Velez v. Crown Life Ins. Co., 599 F.2d 471, 474 (1st Cir. 1979) (citing 1 Moore's Federal Practice 0.99(2)). There are two exceptions to this rule: when the fees are provided for by contract, and when a statute mandates or allows payment of the fees. Id.  The second exception applies here.  Chapter 93A of the Massachusetts Consumer Protection Act allows plaintiffs to collect attorney's fees as part of their damages. See Mass. Gen. Laws ch. 93A, § 9(4).  We thus must decide whether Spielman met the amount-in-controversy minimum by amending his complaint to include a Chapter 93A

_____

[4] In Coventry Sewage, we discussed the argument raised by the appellee in that case that there is a meaningful distinction between "subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." 71 F.3d at 8 (quoting Jones v. Knox Exploration Corp., 2 F.3d 181, 183 (6th Cir. 1993)). Whatever merit that distinction may have as a framework for analysis, it is not helpful here because the Tax Board's ruling does not fit into either category.  As we have explained, the ruling was not a "subsequent event" within the meaning of St. Paul because the plaintiff was never in fact at risk of harm in excess of the jurisdictional amount.  Nor was the ruling a revelation.  There was good reason to believe from the beginning of this action that Spielman's damages fell well below the amount-in-controversy minimum, and the Tax Board's ruling merely confirmed that fact.

claim.    Spielman does not allege, however, that his individual attorney's fees are high enough to boost his damages claim over the amount-in-controversy minimum.  Rather he seeks, for jurisdictional purposes, to aggregate the attorney's fees that he anticipates will be needed to press the claim of the entire class for which he is named plaintiff.  Because of Supreme Court precedent, this is a difficult argument to make.

As we have noted, the statute that provides for federal court diversity jurisdiction, 28 U.S.C. § 1332(a), requires that the "matter in controversy" exceed the jurisdictional minimum. Based on this language, "[t]he traditional judicial interpretation . . . has been from the beginning that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." Snyder v. Harris, 394 U.S. 332, 335 (1969) (citing earlier cases).  In Snyder, the Court rejected the argument that this rule should not apply to class action plaintiffs, whose claims, the argument goes, should instead be aggregated for jurisdictional purposes.   The Court said:

> To overrule the aggregation doctrine at this late date would run counter to the congressional purpose in steadily increasing through the years the jurisdictional amount requirement.  That purpose was to check, to some degree, the rising caseload of the federal courts, especially with regard to the federal courts' diversity of citizenship jurisdiction.

- 13 -

<u>Id.</u> at 339-40.  The Court reaffirmed this holding in <u>Zahn</u> v. <u>International Paper Co.</u>, 414 U.S. 291 (1973), adding, "Neither are we inclined to overrule <u>Snyder</u> v. <u>Harris</u> nor to change the Court's long-standing construction of the 'matter in controversy' requirement of § 1332."[5]  <u>Id.</u> at 301.

The Supreme Court has not discussed whether the named plaintiff in a class action may aggregate the attorney's fees of the class to satisfy the jurisdictional amount requirement when a state statute like Massachusetts's Chapter 93A authorizes the awarding of fees to a successful litigant.  Two circuits have addressed this question.  Reviewing a claim made under a California statute that

_____

[5] <u>Zahn</u> held that courts may not exercise supplemental jurisdiction over the claims of class action plaintiffs who do not separately meet the jurisdictional minimum.  <u>Zahn</u>, 414 U.S. at 301. There is a question about whether this holding remains good law after the enactment of the Judicial Improvements Act of 1990, 28 U.S.C. § 1367.  <u>See</u> <u>Packard</u> v. <u>Provident Nat'l Bank</u>, 994 F.2d 1039, 1045 n.9 (3d Cir. 1993) (discussing extensive academic literature).  The circuits have split over whether the Act intended to overrule <u>Zahn</u> and allow courts to exercise such supplemental jurisdiction.  <u>Compare</u> <u>Stromberg Metal Works, Inc.</u> v. <u>Press Mech., Inc.</u>, 77 F.3d 928 (7th Cir. 1996) and <u>In re Abbott Labs.</u>, 51 F.3d 524, 529 (5th Cir. 1995) (holding that supplemental jurisdiction may exist after the Judicial Improvement Act), <u>with</u> <u>Meritcare Inc.</u> v. <u>St. Paul Mercury Ins. Co.</u>, 166 F.3d 214, 219 (3d Cir. 1999) and <u>Leonhardt</u> v. <u>Western Sugar Co.</u>, 160 F.3d 631, 640 (10th Cir. 1998) (holding that Congress did not intend to change the rules set by <u>Zahn</u>).  Since we find that the court lacked jurisdiction over Spielman, we do not reach his contention that it should exercise supplemental jurisdiction over the other members of the class even though their individual claims do not meet the amount requirement.  The Judicial Improvements Act does not call into question <u>Zahn</u>'s reaffirmance of <u>Snyder</u>'s holding that individual damages claims may not be aggregated to satisfy the jurisdictional minimum.

- 14 -

authorizes attorney's fees, the Ninth Circuit held that aggregating anticipated fees to the named plaintiff to allow her to meet the amount-in-controversy requirement "would conflict with the policy of Zahn . . . in which the Supreme Court reaffirmed that the 'matter in controversy' requirement must be satisfied by each member of the plaintiff class." Goldberg v. CPC Int'l, Inc., 678 F.2d 1365, 1367 (9th Cir.), cert. denied, 459 U.S. 945 (1982). The court thus held that "potential" attorney's fees could not be used to satisfy the amount-in-controversy minimum. Id. at 1367. Several district courts have followed this approach. See, e.g., Karofsky v. Abbott Labs., 921 F. Supp. 18 (D. Me. 1996); Ratliff v. Sears, Roebuck & Co., 911 F. Supp. 177 (E.D.N.C. 1995); Quebe v. Ford Motor Co., 908 F. Supp. 446 (W.D. Tex. 1995); Visintine v. Saab Auto. A.B., 891 F. Supp. 496, 499 (E.D. Mo. 1995); Gilman v. Wheat, First Sec., Inc., 896 F. Supp. 507 (D. Md. 1995).

The Fifth Circuit considered the question of whether attorney's fees may be aggregated to obtain federal jurisdiction under a Louisiana statute that specifically authorizes the awarding of attorney's fees in a class action. In re Abbott Labs., 51 F.3d 524, 526 (5th Cir. 1995), determined that there was federal jurisdiction for a class action claim governed by Article 595 of the Louisiana Code of Civil Procedure. Article 595 provides: "The court may allow the representative parties their reasonable expenses of litigation,

- 15 -

including attorney's fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial, to the class." La. Code Civ. Proc. art. 595. The Fifth Circuit said that Article 595 entitled class representatives to anticipated attorney's fees, and that the phrase "representative parties" referred to the named plaintiff or plaintiffs in a class action. The court rejected the argument that Zahn precluded attributing the fees of the class to the named plaintiff when that is what a state statute provides. See Abbott Labs., 51 F.3d at 527. The court distinguished Goldberg on the ground that it "sheds little light on the distinct policy choices behind Louisiana's decision regarding rights of recovery by class members." Id. at 526. An evenly divided Supreme Court recently affirmed the Fifth Circuit's decision under the name of Free v. Abbott Labs., Inc., 529 U.S. 333 (2000).

Spielman argues that the attorney's fees provision of Chapter 93A, like Article 595 of the Louisiana code as construed in Abbott Labs., allows him to aggregate the anticipated fees of his class toward the amount-in-controversy minimum. Chapter 93A provides in relevant part:

> If the court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said action.

- 16 -

Mass. Gen. Laws ch. 93A, § 9(4). Spielman urges us to read "petitioner" in the same way that the Fifth Circuit read "representative parties" in Article 595. We have reservations about the correctness of Abbott Labs. Even if that were not the case, however, we would decline to adopt the parallel reading that Spielman advocates.

To begin with, § 9(4) does not refer to class actions or to named class action plaintiffs. Nor do other sections of Chapter 93A specifically discuss multiple-party lawsuits. The statute simply offers a cause of action to a consumer or a group of consumers who claim that a business has defrauded them. Thus in contrast to Article 595 of the Louisiana code, which explicitly provides that attorney's fees may be awarded to the "representative parties . . . when as a result of the class action a fund is made available . . . to the class" (emphasis added), nothing in Chapter 93A suggests that the legislature intended "petitioner" to refer to the named plaintiff in a class action rather than to each of the members of the class.

As the Massachusetts district court pointed out recently, "petitioner" is a generic term in Massachusetts law. See Ciardi v. F. Hoffmann-La Roche, Ltd., No. Civ. A. 99-11936-GAO, 2000 WL 159320, at *2 (D. Mass. Feb. 7, 2000). In rejecting the same aggregation argument that Spielman makes here, Ciardi ably explained: "The term 'petitioner'

is one historically used in Massachusetts as the equivalent in equity of the term 'plaintiff' at law. While petitioners might from time to time have been representatives, they were not necessarily so, and the terms in Massachusetts are not interchangeable." Id. at *2. We agree. The text of § 9(4) does not support Spielman's argument that the statute uses the word "petitioner" as the equivalent of the term "representative" in the Louisiana statute.

We also reject Spielman's contention that the Massachusetts Supreme Judicial Court's statement in Coggins v. New England Patriots Football Club, Inc., 550 N.E.2d 141 (Mass. 1990) (Coggins II), about the award of attorney's fees from a common fund controls the jurisdictional outcome here. That case began with Coggins v. New England Patriots Football Club, Inc., 492 N.E.2d 1112 (Mass. 1986) (Coggins I), in which a group of non-voting shareholders brought a corporate derivative action to challenge a merger, and the SJC ordered the calculation of rescissory damages. Id. at 1115-16. The parties then settled. Following settlement, the plaintiffs filed a motion for attorney's fees and costs to be assessed against the defendants. The superior court rejected that argument on the ground that in Coggins I, "the higher court ordered the derivative claim 'reinstated' . . . solely to permit a reconstructive calculation of rescissory damages, and not as a calculation of corporate damages." Coggins II, 550 N.E.2d at 142. Reasoning that the plaintiffs thus had not succeeded

in garnering funds on the corporation's behalf, the superior court ruled that their attorney's fees should come from a common settlement fund rather than from the defendants. Id. In affirming the lower court's ruling, the Massachusetts Supreme Court said that attorney's fees may be awarded from a common settlement fund, but emphasized the discretionary nature of such an award. "Where a party has at his or her own expense, been successful in creating, preserving or enlarging a fund in which other parties have a rightful share, a court may order the payment of attorneys' fees and expenses out of the fund as part of the damages award. . . . Such an allowance is discretionary and not a matter of strict right." Id. at 143 (citations omitted).

Even if a court were to apply the rule set forth in Coggins II in a Chapter 93A class action like this one, and exercise its discretion to award the named plaintiff attorney's fees from a common settlement fund, the award would simply be the unremarkable result of an exercise of the equitable discretion of the trial court rather than the mandated result of any language in Chapter 93A. Indeed, Chapter 93A does not, by its terms, address the aggregation/allocation issue in a class action suit. The possibility of an aggregated award through the exercise of the court's discretion does not justify disregarding

the anti-aggregation principles of <u>Snyder</u> and <u>Zahn</u>.  <u>See</u> <u>Snyder</u>, 394

U.S. at 339-40; <u>Zahn</u>, 414 U.S. at 301.[6]

In sum, we reject Spielman's argument that Chapter 93A's authorization of attorney's fees requires that such fees be aggregated to the named plaintiff for purposes of determining federal jurisdiction.  For the reasons we have stated, we find that Spielman's amended complaint fails to meet the amount-in-controversy minimum.  Having found no basis for the exercise of federal diversity jurisdiction, we affirm the district court's dismissal of Spielman's case.

**Affirmed.**

---

[6] Nor do the Massachusetts cases that are the source of the language quoted in <u>Coggins II</u> help Spielman.  These cases involve three narrow exceptions in equity practice to the general rule that a litigant must pay for his own lawyers.  In <u>Commissioner of Insurance</u> v. <u>Massachusetts Accident Co.</u>, 61 N.E.2d 137 (Mass. 1945), the court said that one of the exceptions applied when "a litigant" at his own expense created or increased "a fund in which others have a right to share." <u>Id.</u> at 139-40.  Examples of such funds were those controlled by the executor of a will or a receivership.  <u>See, e.g.</u>, <u>Boynton</u> v. <u>Tarbell</u>, 172 N.E. 340 (Mass. 1930); <u>Davis</u> v. <u>Bay State League</u>, 33 N.E. 591 (Mass. 1893).