Stephen PAYNE, et al., Plaintiffs,

v.

The GOODYEAR TIRE & RUBBER CO., Defendant.

No. CIV.A.01–10118–NG.

United States District Court, D. Massachusetts.

Nov. 7, 2002.

Kevin T. Peters, Todd & Weld, Boston, MA, for Plaintiffs.

James K. Archibald, Jeffrey A. Dunn, Venable, Baetjer, Howard & Civiletti, Washington, DC, Michelle I. Schaffer, Campbell, Campbell & Edwards, Richard L. Edwards, Campbell, Campbell, Edwards & Conroy, P.C., Boston, MA, Douglas R. Kay, Venable, Baetjer, Howard & Civiletti, Washington, DC, Robert Toland, II, Campbell, Campbell, Edwards & Conroy, Wayne, PA, for Defendant.

## MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO DISMISS ALL NON-"NAMED PLAINTIFF" CLAIMS FOR LACK OF *SUBJECT MATTER JURISDICTION*

GERTNER, District Judge.

## I. *INTRODUCTION*

Plaintiffs bring this putative class action on behalf of owners of homes in New England heated by radiant floor heating systems created and marketed by a now-defunct company called Heatway that include defendant Goodyear's "Entran II" special-purpose rubber hose. The complaint alleges that the hose is defective as designed—resulting in oxidation, hardening, cracks, and eventually leaks that cause property damage—and that Goodyear failed adequately to warn customers of risks associated with its use.

In support of this motion to dismiss, defendant Goodyear argues that the Court lacks subject matter jurisdiction over non-named plaintiffs in this diversity action because the "vast majority" of their claims do not approach the $75,000 "amount in controversy" requirement of 28 U.S.C. § 1332(a). Goodyear bases its claims on *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), in which the U.S. Supreme Court held that each plaintiff in a class action "must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case...." *Id.* at 301, 94 S.Ct. 505.

For reasons described more fully below, I am unable to conclude "to a legal certainty" that *all* of the non-named plaintiffs' claims fail to meet the jurisdictional amount; indeed, it appears certain that at least some non-named plaintiffs do have potential claims over $75,000. I also join the majority of circuit courts to find that *Zahn* was superseded by the Judicial Improvements Act of 1990, codified at 28 U.S.C. § 1367, which confers supplemental jurisdiction over plaintiffs whose claims do not meet the "amount in controversy" requirement. The defendant's motion is therefore **DENIED**.

## II. *VALUATION OF PLAINTIFFS' CLAIMS*

As with all motions to dismiss brought under Fed.R.Civ.P. 12, I accept as true the allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs. *See Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). At the same time, because federal courts have limited juris-

diction, the party invoking a federal forum has the burden of demonstrating the existence of federal jurisdiction. *See Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995). Furthermore, it is within a court's discretion to make "appropriate inquiry" beyond the pleadings to "satisfy itself on authority to entertain the case." *Gordon v. National Youth Work Alliance*, 675 F.2d 356, 363 (D.C.Cir.1982) (citations omitted); *see also Land v. Dollar*, 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion ... the court may inquire, by affidavits or otherwise, into the facts as they exist").

■ More specifically, plaintiffs bear the burden of showing that they meet the amount-in-controversy prerequisite to federal jurisdiction. *See Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir.2001). The plaintiffs here invoke the "diversity" provisions of 28 U.S.C. § 1332(a), which confers jurisdiction over actions between "citizens of different states" when the "matter in controversy" exceeds $75,000. Ordinarily, a plaintiff's "general allegation of damages that meet the amount requirement suffices unless questioned by the opposing party or the court." *Spielman*, 251 F.3d at 5. When faced with a motion to dismiss for failure to state a claim for the "amount in controversy" required for diversity jurisdiction, "all the plaintiff must do to carry his burden ... is to set forth facts which, if true, would prevent the trier from concluding *to a legal certainty* that the potential recovery is capped at a figure below the jurisdictional minimum." *Barrett v. Lombardi*, 239 F.3d 23, 30–31 (1st Cir.2001) (emphasis in original).

There are fifteen named plaintiffs.[1] For purposes of this motion to dismiss, the defendant does not challenge the specific allegations in the complaint that each has suffered more than $75,000 in damages. However, Goodyear also asserts that "available evidence strongly suggests that the vast majority" of claims among *non-named members* of the putative class are less than $75,000, even as it acknowledges that "the complete identity of all putative class members is not currently known." Goodyear supports its position by extrapolating from two relatively small "samples" of homeowner warranty claims: (1) among thirty-six claims from New England residents submitted to Heatway's bankruptcy trustee, only two asserted more than $75,000 in damages ($320,000 and $581,100, respectively); and (2) among thirteen payments to New England residents from a Heatway insurer, Lexington Insurance Co., none approached $75,000. As a result, Goodyear expressly seeks dismissal of claims against *"all"* non-named plaintiffs.

■ Plaintiffs respond by noting, among other things, that they allege state consumer protection act violations on behalf of the class, which could—and in a Colorado case, apparently already did—result in treble damage awards against Goodyear. It is well-established that colorable multiple damage claims should be included in the amount-in-controversy calculus. *See, e.g., F.C.I. Realty Trust v. Aetna Cas. & Sur. Co.*, 906 F.Supp. 30, 32 n. 1 (D.Mass.1995) (explaining that treble damages under Mass. Gen. L. c. 93A "are a form of punitive damages, and '[w]here both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining the jurisdictional amount.'") (citing *Bell v. Preferred*

---

1. Fourteen of the plaintiffs appear to consist of seven married couples, each residing in a single household, so the complaint actually deals with eight houses allegedly damaged because of Goodyear's hose.

*Life Assur. Soc.*, 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943)). With treble damages, six additional bankruptcy trustee claimants from the sample of thirty-four that Goodyear relies upon would cross the jurisdictional threshold.

■ Plaintiffs also allege, based on the affidavit of Parker Wheat, that 5 million linear feet of Entran II hose was distributed in New England among as many as 2,000 homes. Plaintiffs assert that a "conservative" estimate of $50 per linear foot to replace the hose would yield overall claims that could exceed $250 million. This would reflect average claims of $125,000 to *replace* allegedly defective systems, as distinguished from the property damage claims caused by leaky systems, which are reflected in the claim samples that Goodyear cites.

In the end, based on the limited record before me, it appears likely both that some not-insignificant number of non-named plaintiff claims exceed $75,000 and that many may not. This obviously provides no basis in "legal certainty" to dismiss *all* of the non-named plaintiffs as Goodyear requests. Moreover, the entire discussion becomes academic because, as explained below, I conclude that the Court has supplemental jurisdiction over non-named plaintiffs with claims below the jurisdictional amount.[2]

## III. DIVERSITY CLASS ACTIONS AND THE "AMOUNT IN CONTROVERSY" REQUIREMENT

The parties recognize that the legal basis for Goodyear's motion hangs in the balance between *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (holding that every plaintiff in a class action must satisfy the jurisdictional amount) and the Supplemental Jurisdiction statute, 28 U.S.C. § 1367 (conferring supplemental jurisdiction over certain claims related to actions within the court's original jurisdiction). The Fourth, Fifth, Seventh, and Ninth Circuits have held that § 1367 supercedes *Zahn. See In re Abbott Laboratories, Inc.*, 51 F.3d 524 (5th Cir.1995), *aff'd by an equally divided court*, 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000) (per curiam); *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928 (7th Cir.1996);[3] *Gibson v. Chrysler Corp.*, 261 F.3d 927 (9th Cir.2001); *Rosmer v. Pfizer, Inc.*, 263 F.3d 110 (4th Cir.2001). Meanwhile, the Third, Eighth, and Tenth Circuits maintain that *Zahn* is still good law. *See Leonhardt v. Western Sugar Co.*, 160 F.3d 631 (10th Cir.1998); *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214 (3d Cir.1999); *Trimble v. Asarco, Inc.*, 232 F.3d 946 (8th Cir.2000).

The First Circuit has recognized this split in authority without reaching the

---

**2.** Of course, had I not concluded that supplemental jurisdiction obtains over plaintiffs with claims under $75,000, I would face a more vexing decision on class certification, as the parties point out. *Compare, e.g., Zahn v. International Paper Co.*, 53 F.R.D. 430, 433 (D.Vt.1971) (explaining that it would "not be feasible" to certify a class only of those who meet jurisdictional amount and that such a class would create intractable problems including subsequent res judicata litigation) *with Heartland Comm., Inc. v. Sprint Corp.*, 161 F.R.D. 111, 118 (D.Kan.1995) ("[A]n appropriate procedure is to grant class certification (assuming it is proper) and subsequently

dismiss those particular class members, if any, who appear to a legal certainty to have insufficient claims") (citing *In re School Asbestos Litigation*, 921 F.2d 1310, 1313–15 (3d Cir.1990)).

**3.** While *Stromberg* did not concern a class action, Judge Easterbrook clearly explained that § 1367 superceded *Zahn* and Judge Posner later confirmed the applicability of that analysis to the class action context in *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir.1997).

question. *See Spielman v. Genzyme Corp.*, 251 F.3d 1, 7 n. 5 (1st Cir.2001).[4] Two courts from this District have reached opposite results. *Compare Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 60 (D.Mass.1997) (citing *Abbott Labs* for the proposition that "supplemental jurisdiction over unnamed members of class was authorized even though they did not each meet the amount in controversy requirement") *with Mayo v. Key Financial Services, Inc.*, 812 F.Supp. 277, 277 (D.Mass.1993) ("the legislative history of 28 U.S.C. § 1367 clearly indicates ... that the statute was not intended to affect the jurisdictional requirements for diversity class actions set forth in *Zahn* ").[5]

After careful examination of the issue, I am persuaded that *Zahn* is dead, particularly against the backdrop of evolving federal jurisdiction and class action law. In *Zahn*, named plaintiffs brought a putative diversity class action on behalf of 200 lakefront property owners and lessees seeking damages for the defendant's alleged pollution of the lake. *See Zahn v. International Paper Co.*, 53 F.R.D. 430, 430 (D.Vt.

1971). The claim of each named plaintiff satisfied the then-$10,000 jurisdictional amount, but the district court was convinced "to a legal certainty" that some of class members' claims would fall below that threshold. *See id.* at 431. The district court thus concluded that it lacked subject matter jurisdiction over those class members. *See id.* at 431–32. The court reached this decision "with great reluctance," recognizing that "the requirement that each class member meet the jurisdictional amount clearly undermines the usefulness of Rule 23(b)(3) class suits, because the problem of defining an appropriate class over which the court has jurisdiction will often prove insuperable" except for the "extraordinary situation" where every member of the class has a claim that exceeds the jurisdictional amount. *Id.* at 433, 433 n. 1.

A divided panel of the Court of Appeals affirmed, 469 F.2d 1033 (2d Cir.1972), as did the Supreme Court, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). The majority opinion by Justice White relied

---

4. Goodyear attributes significance to the fact that the First Circuit in *Spielman* stated "reservations about the correctness of *Abbott Labs*," the Fifth Circuit case that first held *Zahn* to be superceded by § 1367. *Spielman*, 251 F.3d at 8. However, these "reservations" appear only to concern *Abbott Labs*' subsidiary finding that attorneys fees may be aggregated toward the amount-in-controversy requirement under a Louisiana state statute. *See id.* Goodyear also vaguely asserts that "read as a whole" the *Spielman* opinion "evidences a substantial reluctance to expand in any way subject matter jurisdiction." I, however, take the First Circuit at its word when it states that it did "not reach" the question. *Id.* at 7 n. 5. I would also suggest, to the contrary, that the First Circuit has shown a willingness to view federal jurisdiction expansively for policy reasons. *See, e.g., Amalgamated Transit Union v. Greater Portland Transit District*, 589 F.2d 1, 10 (1st Cir.1978) (aggregating union members' claims based on their

"common and undivided interest" in the union's contract negotiations, in conformance "with the fundamental premise of collective bargaining that a union is to represent its members in all aspects of the labor management relationship" which is "part of national labor policy"); *cf.* 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3704 (making special note of the First Circuit's "interesting" theory in support of aggregation in *Amalgamated Transit Union* ).

5. Goodyear correctly points out that *Duhaime* involved a settlement class, and so the *Zahn* issue presumably was not litigated by the parties. However, it is also worth noting that *Mayo* was decided in 1993 without the benefit of the later appeals court opinions which have treated the question in depth. It relies on legislative history in a single paragraph without discussing the text of § 1367 or the overall legal context.

heavily on the court's earlier decision in *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), which held that class action plaintiff claims could not be aggregated to meet the amount-in-controversy requirement where no individual claim exceeded the jurisdictional limit. The court reasoned that *Snyder* "plainly mandates not only that there may be no aggregation ... where none of the plaintiffs claims more than [the jurisdictional minimum] but also requires that any plaintiff without the jurisdictional amount must be dismissed from the case, even though others allege jurisdictionally sufficient claims." *Zahn*, 414 U.S. at 300, 94 S.Ct. 505.

The vigorous dissent by Justice Brennan countered that once jurisdiction attached to an action brought by named plaintiffs who met the amount-in-controversy requirement, the court could invoke the judicially-created concept of "ancillary jurisdiction" to reach the claims of the other class members.[6] *See id.* at 305, 94 S.Ct. 505 (Brennan, J. dissenting). Noting that the court already had sustained the exercise of ancillary jurisdiction over compulsory counterclaims and over parties who intervene as a matter of right, Justice Brennan argued:

> the practical reasons for permitting adjudication of the claims of the entire class are certainly as strong .... Class actions were born of necessity. The alternatives were joinder of the entire class, or redundant litigation of the common issues. The cost to the litigants and the drain on the resources of the judiciary resulting from either alternative would have been intolerable .... It is, of course, true that an exercise of ancillary jurisdiction in such cases would

result in some increase in the federal courts' workload, for unless the class action is permitted many of the claimants will be unable to obtain any federal determination of their rights. But that objection is applicable to every other exercise of ancillary jurisdiction. It should be a sufficient answer that denial of ancillary jurisdiction will impose a much larger burden on the state and federal judiciary as a whole, and will substantially impair the ability of the prospective class members to assert their claims.

*Id.* at 307–8, 94 S.Ct. 505 (Brennan, J. dissenting)

Oddly, the *Zahn* majority neither examined the possibility of ancillary jurisdiction nor addressed the dissent's policy arguments. Apparently, the court simply was reluctant to expand the use of ancillary jurisdiction or to limit the rule purportedly underlying *Snyder* without a clear signal from Congress. *See id.* at 302, 94 S.Ct. 505 (explaining that "the jurisdictional-amount requirement" for class actions is "plainly etched in the federal courts" and that "the matter must rest there, absent further Congressional action").

In 1990, Congress breathed new life into the *Zahn* dissenters' arguments when it passed the Judicial Improvements Act. Under the heading "Supplemental jurisdiction," 28 U.S.C. § 1367, the statute endorsed and codified the judicially-created doctrines of ancillary and pendent jurisdiction. It provides, in relevant part:

> (a) ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action

---

**6.** For a thorough background on the evolution of ancillary jurisdiction, *see* 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice and Procedure* § 3523.

within such original jurisdiction that they form the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(a)-(b).

 As Judge Easterbrook observed, this language is "direct and unambiguous," *Stromberg*, 77 F.3d at 931. "The statute's first section vests federal courts with the power to hear supplemental claims generally, subject to limited exceptions set forth in the statute's second section. Class actions are not among the enumerated exceptions." *In re Abbott Laboratories*, 51 F.3d at 528. Therefore, the Court in this case "can exercise supplemental jurisdiction over members of [the] class, although they did not meet the amount-in-controversy requirement, as did the class representatives." *Id.* at 529. In short, the explicit Congressional imprimatur of

§ 1367 dissolves any basis for the institutional reticence that lay at the core of *Zahn*.

While I will not retread the thoughtful exegesis of such diverse courts as the 9th Circuit in *Gibson* and the 4th Circuit in *Rosmer*, it is clear to me that the textual arguments of *Zahn's* defenders, first laid out by the 10th Circuit in *Leonhardt*, are untenable. Briefly, *Leonhardt* suggests that the term "original jurisdiction" in § 1367(a), which is required before supplemental jurisdiction can attach to "transactionally related claims," incorporates by reference the diversity and amount-in-controversy requirements of § 1332. *See* 160 F.3d at 640. In other words, the argument goes, if the court does not have *"initial"* jurisdiction over all of the claims and parties in a complaint, then there can be no supplemental jurisdiction either. *Id.* (emphasis in original).

 I disagree. First, if this reading were correct, the term "original jurisdiction" would "mean something different in diversity and federal question cases." *Gibson*, 261 F.3d at 935. "Everyone agrees that in a federal question case there need not be subject matter jurisdiction over all the claims in the complaint for there to be 'original jurisdiction' .... Rather, there is 'original jurisdiction' if there is subject matter jurisdiction over one claim in the complaint ... [and then] there is supplemental jurisdiction over all the other claims that are transactionally related." *Id.* There is no basis in language, law, or logic to treat diversity cases differently.[7] Second, "even if Leonhardt's

---

7. In a subtle variation on *Leonhardt*, the dissent in *Rosmer* implies that, in class actions uniquely and specifically, "original jurisdiction" can only attach if named plaintiffs and the entire class meet the jurisdictional minimum. *See Rosmer*, 263 F.3d 110, 124–25 (4th Cir.2001) (Motz, J. dissenting). Even if that

were correct, it would not necessarily pose an obstacle here. Under the *Rosmer* dissent's reasoning, this Court would have original jurisdiction over the named plaintiffs and a class made up of unnamed plaintiffs whose claims exceed $75,000. Once "original jurisdiction" had attached to that class action, the court

reading of 'original jurisdiction'" were correct, it would not preserve *Zahn* because a putative class action "does not become a class action until certified by the district court .... Therefore, if there is complete diversity and a sufficient amount in controversy for the named plaintiff or plaintiffs in the complaint, there is 'original jurisdiction' ... even as *Leonhardt* would read the term." *Id.* at 937.

The reliance of *Zahn's* defenders on legislative history is equally unpersuasive. They note that the House Report accompanying the statute "expressly states that § 1367 'is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions, as those requirements were interpreted prior to [*Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) ].' The House Report then cites *Zahn* as an example of the pre-Finley interpretation of the jurisdictional requirements of § 1332 that is not to be disturbed." *Leonhardt*, 160 F.3d at 640 (quoting H.R.Rep. No. 101–734, at 28–29 & 29 n. 17 (1990) reprinted in 1990 U.S.C.C.A.N. 6860, 6874–75).

Closer scrutiny, however, reveals a much murkier picture. First, the working papers of a subcommittee of the Federal Courts Study Committee, whose report led to the enactment of the statute, stated that "[O]ur proposal would overrule the Supreme Court's decision in *Zahn v. International Paper Co* .... From a policy standpoint, this decision makes little sense, and we therefore recommend that Congress overrule it." *Gibson,* 261 F.3d at 937 (quoting 1 Federal Courts Study Committee, Working Papers and Subcommittee Reports, July 1, 1990 at 561 n. 33). As the Third Circuit has noted, the full Study Committee did not explicitly adopt this subcommittee statement. *See Meritcare,*

166 F.3d at 220 n. 4; *see also* 13 Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, *Federal Practice & Procedure* § 3523.1 (Supp.2002). But in any case, it is telling that the subcommittee's proposed statutory text is "strikingly similar" to § 1367 as adopted. *Gibson,* 261 F.3d at 937.

Second, the listing of cases in the legislative history whose holdings purportedly survive § 1367 is internally inconsistent. In the same footnote where the House Committee Report approvingly cited *Zahn,* it also cited *Supreme Tribe of Ben–Hur v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921). In *Ben–Hur,* the Supreme Court held that in class actions, only the named plaintiffs must have complete diversity. In other words, absent class members may come from the same state as the opposing party so long as all named plaintiffs are diverse. Adding Rule 23 to § 1367(b)'s exceptions would have the effect of reversing the result in *Ben–Hur* even as it sustains the result in *Zahn.* Indeed, the House Report's admonition that both *Zahn* and *Ben–Hur* survive the enactment of § 1367 is simply impossible to square with the plain text of the statute. *Rosmer,* 263 F.3d at 118 n. 4.

Finally, the legitimacy of the so-called legislative history is highly suspect here because three of its drafters essentially admit that it was *post-hoc* effort to repair what they (as opposed to Congress) thought to be an oversight. *See id.* at 121 (citing Thomas D. Rowe, Jr., Stephen B. Burbank & Thomas M. Mengler, *Compounding or Creating Confusion about Supplemental Jurisdiction? A Reply to Professor Freer,* 40 Emory L.J. 943, 960 n. 90 (1991)).

could exercise supplemental jurisdiction either to expand the class or to add a subclass

of plaintiffs with claims under $75,000, as appropriate.

Fortunately, I need not address the intricacies of Congressional intent because the text of the legislation is unambiguous.[8] When the meaning of a statute "is clear on its face, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Rivera*, 131 F.3d 222, 224 (1st Cir.1997) (internal citation omitted). "Resort to legislative history typically is inappropriate when the meaning of a statute is plainly discernible from its words." *Id.* at 226. Only an interpretation that demands an unreasonable or absurd result would require looking beyond the language. *See Riva v. Massachusetts*, 61 F.3d 1003, 1007 (1st Cir.1995).

The result here, allowing supplemental jurisdiction over non-named plaintiffs with claims under $75,000, does no violence to the principles that the "amount in controversy" requirement is designed to protect. Section 1332(a) itself merely states that the "matter in controversy" in an *action* must exceed $75,000, and does not say anything about requirements applicable to individual claimants or claims. The purpose of the jurisdictional minimum is simply to ensure that federal courts "do not fritter away their time in the trial of petty controversies." *Zahn*, 414 U.S. at 304 n. 4, 94 S.Ct. 505 (citation omitted) (Brennan, J. dissenting). In this case, where named plaintiffs' claims exceed the jurisdictional minimum and the overall value of the case is estimated in millions of dollars, the gatekeeping function of § 1332 is surely fulfilled.

In the end, *Zahn's* demise is not only a necessary and obvious consequence of § 1367 but also a positive development in the law, as Justice Brennan and other commentators would recognize. Whatever concerns may historically have animated formalistic, narrow application of the amount-in-controversy requirement, they pale in comparison to broader goals of "judicial economy, opening the federal courts to all substantial controversies that may be brought in a single action because of the modern liberal attitude toward joinder, and fairness to the litigants in trying claims in a single case." Wright & Miller, *Federal Practice and Procedure* § 3704.

## IV. *CONCLUSION*

For the foregoing reasons, defendant Goodyear's Motion to Dismiss All Non- "Named Plaintiff" Claims for Lack of Subject Matter Jurisdiction [docket entry # 100] is **DENIED.**

**SO ORDERED.**

---

**8.** The mere fact of a circuit split does not necessarily mean that the statute is ambiguous. *See Rosmer*, 263 F.3d at 118.