Joseph **HARDEMON**, Plaintiff, Appellant,

v.

**CITY OF BOSTON**, Defendant, Appellee.

No. 97–2010.

United States Court of Appeals,
First Circuit.

Heard Feb. 5, 1998.

Decided May 8, 1998.

---

Richard J. Fallon for appellant.

Kevin S. McDermott, Assistant Corporation Counsel, City of Boston Law Department, with whom Merita A. Hopkins, Corporation Counsel, and Christian Na were on brief, for appellee.

Before TORRUELLA, Chief Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

PER CURIAM.

In this diversity jurisdiction case, plaintiff-appellant John Hardemon appeals from an adverse decision of a tribunal of the Boston Police Department (BPD). Defendant-appellee is the City of Boston. In order to understand the present posture of the case, it is necessary to follow its procedural path.

In October of 1988 Hardemon was a recruit police officer at the Boston Police Academy. He was discharged from the academy because of unsatisfactory character and failure to adhere to the standard of performance required of Boston Police officers. Hardemon sued the City in January of 1989 in the Massachusetts Superior Court alleging breach of contract, racial discrimination, libel, reckless infliction of emotional distress, invasion of privacy and due process violations by the BPD. The case was removed to the United States District Court for the District of Massachusetts in February, 1989.

The only claim left extant for trial was a denial of substantive due process because of the failure of the BPD to advise Hardemon of his post-termination right to appeal. All the other claims were waived or found by the district court to be not triable.

In July 1992, a jury found that Hardemon had not been informed of his right to a post-termination appeal hearing. The district court then issued an order which in pertinent part states:

1. That, within sixty days of the date of this order, the City of Boston shall petition the Massachusetts Criminal Justice Training Council to hold a hearing to consider: (a) whether Joseph Hardemon was properly dismissed; and (b) if so, whether he ought to be reinstated at the first available opportunity.

Pursuant to the court's order a BPD disciplinary hearing was held in February 1996 before a tribunal. The tribunal decided that the dismissal was justified and supported by a preponderance of the evidence. Hardemon sought judicial review pursuant to Mass. Gen. Laws ch. 249, § 4 (West, 1988), which is entitled "Action in the nature of certiorari." The parties agreed to have the matter tried before a magistrate judge. She found that there was no legal error in the tribunal's decision; an opinion issued on July 23, 1997.

Prior to her decision on the merits, the magistrate judge denied the City's motion to dismiss for lack of federal jurisdiction.

There are two issues before us: jurisdiction, and whether the BPD tribunal erred as a matter of law in not accepting as an exhibit a letter of recantation by the woman who brought the initial complaint against Hardemon.

*Jurisdiction*

Initially we were tempted to bypass the jurisdictional issue because the City easi-

ly prevails on the merits. *See Rojas v. Fitch,* 127 F.3d 184, 187 (1st Cir.1997), *petition for cert. filed,* (U.S. Mar. 18, 1998) (No. 97–1550); *Institut Pasteur v. Cambridge Biotech Corp.,* 104 F.3d 489, 492 (1st Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 2511, 138 L.Ed.2d 1014 (1997); *Hachikian v. FDIC,* 96 F.3d 502, 506 n. 4 (1st Cir.1996); *United States v. Parcel of Land with Bldg., App. and Imp.,* 928 F.2d 1, 4 (1st Cir.1991). The Supreme Court, however, has recently issued a decision in which a plurality disapproves such an approach. *See Steel Co. v. Citizens For A Better Environment,* —— U.S. ——, ——, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998). The various opinions in the case, read as a whole, are not entirely clear as to whether (or to what extent) *Steel Co.* undermines our earlier practice. In all events, having noted the red flag, we see no need in this case to test the outer limits of the Court's tolerance, and, thus, we turn to the jurisdictional issue.

At the outset we note that diversity of citizenship is not questioned. Hardemon was a resident of Baltimore, Maryland, at the time the complaint was filed. The focus of the City's attack on jurisdiction is the "amount in controversy." The City argues that Hardemon's affidavit filed in response to the City's motion to dismiss for lack of jurisdiction failed, as a matter of law, to establish the requisite $50,000 amount in controversy. The City argues that the district court erred in its reliance on *Department of Recreation and Sports of Puerto Rico v. World Boxing Ass'n,* 942 F.2d 84 (1st Cir.1991), for its finding that Hardemon's affidavit sufficed to meet the "amount in controversy" requirement. (The present requirement is $75,000; at the time the complaint was filed the amount was $50,000.)

We reject this argument. There is no doubt that the amended complaint met the "amount in controversy" requirement. The pertinent paragraphs of the affidavit state:

6. As a result of the wrongful termination, I have lost wages and fringe benefits, including but not limited to vacation pay, medical insurance coverage, tuition benefits and separation benefits.

7. My recollection is that my monthly salary was approximately $1,980 while I was at the Academy.

8. It is my belief that if I had been graduated from the Academy and had become a full fledged police officer, that my salary would have been increased substantially but that in any event, I would have been earning no less than the $1,980 which I earned monthly while at the Academy.

9. Based on the itemized losses described above, the total value of the financial loss incurred as a result of the termination, exceeds $50,000.

*World Boxing Ass'n,* 942 F.2d 84, was an action for declaratory judgment. We pointed out that in such an action the amount in controversy is measured by the value of the object of the litigation. We held that, "[t]he amounts actually mentioned in the record for airfares and hotel bills and for the services of a handwriting expert—have nothing to do with the value of the right the Commission is seeking to vindicate in this lawsuit." *Id.* at 88.

The instant case is *not* a declaratory judgment action. It is an action alleging wrongful termination. Secondly, the magistrate judge did not cite to *World Boxing Ass'n* for the proposition that, "Hardemon's affidavit alleging losses in backpay satisfied his burden of demonstrating the requisite jurisdictional amount." City's Br. at 12. We quote from the opinion below:

As a general matter, plaintiff's burden of proving it meets the required amount in controversy is satisfied by simply alleging the amount in the complaint. *Dep't of Recreation & Sports of Puerto Rico v. World Boxing Ass'n,* 942 F.2d 84, 88 (1st Cir.1991). However, there is long standing precedent that once diversity jurisdiction has been challenged, the burden shifts from merely averring the amount in controversy to substantiating the amount in controversy. *See Gibbs v. Buck,* 307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939); *Frederick v. ConAgra,* 713 F.Supp. 41, 47 (D.Mass.1989). When faced with a motion to dismiss, plaintiff has the burden of proving jurisdiction "by showing that it does not appear to legal certainty that its

claim is for less than the jurisdictional amount." *Frederick,* 713 F.Supp. at 47. Plaintiff may meet this burden by amending the pleading or by submitting affidavits which sufficiently substantiate the alleged amount in controversy. *Kenney v. Hoover,* 909 F.Supp. 34, 36 (D.Mass.1995).

(Emphasis added.)

*World Boxing Ass'n* was cited only for the proposition that the "amount in controversy" may be satisfied by alleging it in the complaint. It was not the court below that erred in relying on *World Boxing Ass'n* but counsel for the City who misread the district court's opinion. This error is compounded by the City's conversion of a statement in a declaratory judgment case about the value of the right sought into a general diversity rule that what matters is the value of the right sought, not the amount of damages claimed. Based on this infirm premise the City argues that, "Hardemon's allegation of loss of back pay had nothing to do with the right he was seeking to vindicate in his complaint to the district court, to wit, the right to clear his name." City's Br. at 13. But there is nothing in the complaint asserting Hardemon's right to clear his name. Counts one through fourteen were factual assertions and background information. There is no mention in any of these counts that Hardemon wanted to clear his name. We quote the balance of the complaint:

15. The actions of the Panel were arbitrary, capricious, were not supported by substantial evidence and relied heavily on hearsay evidence which was not supported by competent corroborative evidence.

16. The Panel did not have any written guidelines or objective criteria which would have assisted it in reaching a fair and impartial decision based on the evidence. Instead, the members of the Panel were influenced by bias in favour of the defendant, which is the employer of all of its members.

17. The decision does not reflect a careful and impartial weighing of the evidence and is arbitrary, capricious and against the evidence and the substantial weight of the evidence.

WHEREFORE, plaintiff prays that an order issue from this Honorable Court to the defendant City of Boston, directing it to certify to this court, a true and complete and perfect record of all proceedings before the Panel, together with a transcript of the evidence and all exhibits and findings of fact made by the Panel, to the end that any errors of law may be determined and corrected by this court and to enable the court to determine whether the decision was warranted as a matter of law upon the evidence.

Plaintiff further prays that the decision of the Panel and of the defendant City of Boston be quashed and reversed, that this court order the defendant to admit the plaintiff to the next available training class at the Academy and grant such other and further relief as may appear equitable and appropriate.

The City cites to a case holding, *inter alia,* that "a nonpermanent municipal employee is entitled to a termination hearing for the sole purpose of clearing his name and thereby restoring his reputation." *Grant v. Police Comm'r of Boston,* 7 Mass.App.Ct. 296, 387 N.E.2d 178, 180 (1979). The quote by the City from *Grant* is taken out of context. The pertinent part of the opinion reads as follows:

Termination alone is not sufficient basis for a claim of a denial of due process rights.... Due process affords protection against damage to a person's standing and associations in the community, and against actions by an employer which foreclose employment opportunities because these are liberty interests within the reach of the Fourteenth Amendment.... When these liberty interests have been violated, a nonpermanent municipal employee is entitled to a termination hearing for the sole purpose of clearing his name and thereby restoring his reputation. A violation occurs if an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination...." *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977). However, because of the limited purpose of the hearing to clear one's name, it is a condition precedent to the hearing

that the employee deny the charges. "If he does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him." *Codd*, 429 U.S. at 627–28, 97 S.Ct. at 884.... The plaintiff's failure to challenge the charges suggests that he does not claim that the defendant created false information.

Not only must there be a creation of false information by the employer, there also must be a dissemination of that information by the employer before there is a depreciation of an employee's liberty interests.... The protection of liberty interests is violated neither by the presence of adverse information in a personnel file, standing alone ..., nor by an involuntary termination that has made future employment difficult to obtain....

*Id.*, 387 N.E.2d at 180 (citations omitted).

The analysis in *Grant* was based on a claim that the termination at issue offended substantive due process because it "damage[d] [Grant's] standing and associations in the community, and ... foreclose[d] employment opportunities." *Id.* It was "[w]hen these liberty interests have been violated," *id.*, that "a nonpermanent employee is entitled to a termination hearing for the sole purpose of clearing his name and thereby restoring his reputation," *id.* Hardemon, however, alleged a procedural due process violation on the basis of the City's failure to inform him of his right to appeal the termination decision. He was not seeking to clear his name on the basis of the liberty interests recognized in *Grant*. *Grant* is of no avail to the City.

There is an additional reason why Hardemon's affidavit relying on back pay to meet the amount in controversy requirement was sufficient. After the jury verdict finding a substantive due process violation, the district court ordered the City to hold a hearing to consider whether Hardemon was properly dismissed "and (b) if so, whether he ought to be reinstated at the first available opportunity." Obviously, if Hardemon were reinstated he would be entitled to back pay.

We affirm the holding of the district court that Hardemon's affidavit sufficed to meet "the amount in controversy" jurisdictional requirement.

In the district court, the City argued that a state statute vesting jurisdiction in the Massachusetts Superior Court of this type of action precluded federal jurisdiction. The City has wisely decided not to pursue this challenge on appeal.

### The Merits

The only substantive issue before us is whether it was legal error for the BPD tribunal to refuse to accept as an exhibit a recantation letter from Agnes Cansler dated August 31, 1990, and whether such refusal resulted in substantial prejudice to Hardemon. Unlike the district court we are not called upon to determine whether the BPD tribunal's decision should be affirmed. The magistrate judge affirmed the tribunal's refusal to reinstate Hardemon to the Boston Police Department, ruling that, "there was no legal error in the Tribunal's decision." Our focus is narrowed to the sole question of whether it was legal error for the BPD tribunal to refuse to admit the letter of recantation into evidence. Hardemon's appeal is based solely on this issue.

In reviewing the tribunal opinion, the magistrate judge stated:

> Ms. Cansler's letter was not admitted because its authentication was not established.[4] Further, there was no evidence that the letter was ever received by the legal department of the Boston Police and thus could not be considered during the investigation.

The footnote states:

> [4] Plaintiff contends that Ms. Cansler's whereabouts could not be determined at the time of the hearing.

These rulings and findings, if so they be, are not given any deference by us.

The relevant facts are as follows. Close to midnight on July 11, 1988, Recruit Officer Hardemon went to a house in Jamaica Plain, Massachusetts, to support his friend Timothy Ellerbee in a dispute with in-laws. The dispute degenerated into name-calling and rock throwing. Agnes Cansler armed herself with

a baseball bat to defend herself from the Ellerbees. Hardemon took the baseball bat away from her. On July 13, Agnes Cansler filed a complaint with the police department, which stated:

About 7 p.m. there was a family dispute involving inlaws [sic] at the home of the complainant, which was responded to by Area E officers. As a result of that fight, Recruit Officer Joe Hardemon, best friend of one of the inlaws involved earlier, Tim Ellerbe, of 2031 Columbus Ave., came to Ms. Cansler's home with approximately 9 other B/Ms. These young men came to continue the fight started earlier. After James Ellerbe (Tim's brother) pushed and hit Ms. Cansler's mother, Thelma Harris, 61 years, Ms. Cansler picked up and was swinging a bat in self-protection, but she did not hit anyone with it. Some members of the group with Recruit Officer Hardemon were throwing bottles. Recruit Hardemon was encouraging the group to attack Ms. Cansler by shouting, "Why don't you Bumrush her!!!" A neighbor called the police and several officers from Area E responded. A black officer spoke with Recruit Hardemon and told him that he would see him at the Academy.

Ms. Cansler feels that Recruit Hardemon should not have joined into this family problem and should definately [sic] not have taken an active part in the fight, but, as a police officer, should have tried to calm or prevent the incident.

(Note: as a result of this fight, Ms. Cansler's daughter, Lasanya, 16 years, sustained a minor injury to her face. This was inflicted by James Ellerbe.)

The letter of recantation states:

To the Legal Department of Boston Police,

I, Agnes Cansler made a complaint about Joe Hardemon on Boylston St. Jamaica Plain on July 12, 1988. He was not involved in that dispute. On 7–12–88 he was coming to visit my sister and I thought he was coming to cause trouble with Timothy Ellerbee and Family because they were friends.

Someone in the crowd said Bumrush Agnes and everybody thought Joe said it but he didn't, it was one of the Ellerbees that said it.

I just want to inform you that we are still speaking as friends and I think he would make a good police officer.

If you have any questions you can call me at (617)282–5103. The address is

5 Greenmount St. # 2

Dor. MA 02125

Thank You.

Agnes Cansler

Sergeant Devlin was assigned to investigate the matter. He found that Hardemon lied about two matters concerning Hardemon's conduct prior to the incident itself. The BPD tribunal found that there was ample evidence that Hardemon had made untruthful statements to Sergeant Devlin during the investigation. The tribunal also concluded that Hardemon was improperly involved in an altercation involving family and friends. Agnes Cansler is the sister of Cheryl Harris who had a relationship with Hardemon and was the mother of his twin daughters.

 Our scope of review is restricted by the issue which was framed by Hardemon: did the BPD tribunal commit legal error on excluding the letter of recantation? Mass. Gen. Laws Ann. ch. 30A, § 11(2) (West 1992) provides:

(2) Unless otherwise provided by any law, agencies need not observe the rules of evidence observed by courts; but shall observe the rules of privilege recognized by law. *Evidence may be admitted and given probative effect only if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs.* Agencies may exclude unduly repetitive evidence, whether offered on direct examination or cross-examination of witnesses. (Emphasis added.)

The core finding of the BPD tribunal was:

12. Based on the findings and recommendations of the investigation, Mr. Hardemon was terminated from the Boston Police Department on October 6, 1988 for becoming involved in a situation involving family and friends regarding the events set forth in Complaint # 4273, for untruthfulness

relative to his participation in the investigation of those events, and for conduct unbecoming a police officer in reference to the two aforementioned charges.

We agree with Hardemon that the Chief Hearing Officer excluded the exculpatory letter at the hearing on the grounds of relevance. The BPD tribunal later gave the following reasons in writing for excluding the letter:

> First, Ms. Cansler's letter was not admitted into evidence because its authenticity could not be established. Furthermore, there is no proof that the addressee, the Legal Department of the Boston Police ever received it. In fact, when Captain Dunford was presented with the letter on the witness stand, he stated that he had never seen it before.

We do not agree with Hardemon that the letter was relevant. The letter had no bearing on the findings by Sergeant Devlin that Hardemon had lied to Devlin during the investigation of Hardemon's conduct on the day of the incident. Nor did the letter state that Hardemon was not present during the altercation at Jamaica Plain. As the City correctly points out, "[t]he issue at the hearing was whether Hardemon was properly terminated based on the findings from that *investigation*, not from the *allegations* by Agnes Cansler." City's Br. at 17 (emphasis added). The letter was tangential at best to the determination that the tribunal was making.

But even if the letter was somehow relevant, it was worthless as evidence. A comparison between the complaint process and the letter makes this clear. After she filed the complaint, Ms. Cansler was questioned by the investigating police officer about its contents. The subsequent recantation letter did not give the investigators any opportunity to probe her new allegations. They could not ask her in particular why she had originally made a police complaint that she now claims was wholly false, or why her current version of events is any more likely to be true. The letter was simply unreliable; it was not "the kind of evidence on which reasonable persons are accustomed to rely in

the conduct of serious affairs." Mass Gen. Laws Ann. ch 30A, § 11(2).

There appears to have been no effort made to have Agnes Cansler testify at the hearing or to take her deposition for use at the hearing.

We rule that it was not legal error for the BPD tribunal to exclude the recantation letter from evidence.

*Judgment for the defendant. No costs for either party.*

BOWNES, *Senior Circuit Judge* (concurring).

I write separately because I think that the court has brushed aside the holding of *Steel Co. v. Citizens For A Better Environment,* —— U.S. ——, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), and its effect on our approach to difficult jurisdictional issues in the future. The panel says that it is "not entirely clear as to whether (or to what extent) *Steel Co.* undermines our earlier practice." It is entirely clear to me that the Court has generally prohibited our prior practice of avoiding difficult jurisdictional issues when the case could alternatively be resolved easily on the merits in favor of the same party.

A full understanding of the Court's view on this issue requires a close reading of Justice O'Connor's concurrence, as well as Justice Scalia's majority opinion.

In its majority opinion, the Court noted that several courts of appeals

> find it proper to proceed immediately to the merits question, despite jurisdictional objections, at least where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied....
>
> We decline to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers.

—— U.S. at ——, 118 S.Ct. at 1012 (citations and footnote omitted).

Justice O'Connor, joined by Justice Kennedy, made it clear that she joined the majority

opinion, and that she explicitly "agree[d]" with the general rule that "federal courts should be *certain* of their jurisdiction before reaching the merits of a case." *Id.* at ——, 118 S.Ct. at 1020 (emphasis added). But then she went on to note, "[a]s the Court acknowledges, ... several ... decisions 'have diluted the absolute purity of the rule that Article III jurisdiction is always an antecedent question.'" *Id.* (quoting *id.* at ——, 118 S.Ct. at 1016). Finally, Justice O'Connor explained that she was writing separately "to note that, in [her] view, the Court's opinion should not be read as cataloging an exhaustive list of circumstances under which federal courts may exercise judgment in 'reserv[ing] difficult questions of ... jurisdiction when the case alternatively could be resolved on the merits in favor of the same party.'" *Id.* (quoting *Norton v. Mathews,* 427 U.S. 524, 532, 96 S.Ct. 2771, 2775, 49 L.Ed.2d 672 (1976)).

Reading the majority and concurring opinions in *Steel Co.* together, there is a Supreme Court majority in support of the general rule that "federal courts should be certain of their jurisdiction before reaching the merits of a case." *Id.* at ——, 118 S.Ct. at 1020 (O'Connor, J., concurring); *see id.* at ——, ——, 118 S.Ct. at 1012, 1016 (majority opinion). While this general rule is perhaps not "absolute[ly] pur[e]," the circumstances that would warrant an exception to the rule seem extremely rare. *See Steel Co.,* —— U.S. at ——–——, 118 S.Ct. at 1014–15 (majority opinion); *id.* at ——, 118 S.Ct. at 1020 (O'Connor, J., concurring). It appears that Justices O'Connor and Kennedy would dilute the general rule only to the extent that they believe the cases discussed in the majority opinion, *id.* at ——–——, 118 S.Ct. at 1014–15, do not exhaust the rare circumstances in which an exception would be appropriate, *id.* at ——, 118 S.Ct. at 1020.

I do not know what the panel expects to achieve by casting doubt on the holding and effect of *Steel Co.* As Court of Appeals judges we have a duty to follow it, not avoid it.