# United States Court of Appeals
## For the First Circuit

No. 11-1373

SALAH ABDEL-ALEEM,

Plaintiff, Appellant,

v.

OPK BIOTECH LLC, et al.

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard Stearns, U.S. District Judge]

Before

Boudin, Stahl, and Thompson, Circuit Judges.

Mohamad Saleh Ahmad and Yussuf Abdel-Aleem, on brief for appellant.
Michael S. Rabieh, Lichten & Liss-Riordon, P.C., on brief for appellee.

January 13, 2012

**STAHL**, <u>Circuit Judge</u>.  Salah Abdel-Aleem (Abdel-Aleem) was the defendant in a Massachusetts state court lawsuit prosecuted by OPK Biotech LLC.  Alleging Massachusetts state law claims of abuse of process and intentional and negligent infliction of emotional distress as a result of that suit, Abdel-Aleem brought an action claiming diversity jurisdiction against OPK Biotech LLC, its CEO, Zafiris Zafirelis, and its registered manager, Alexander Pugachev (collectively, OPK)[1] in federal district court.  The district court dismissed the complaint for lack of subject matter jurisdiction, holding that Abdel-Aleem had failed to adequately allege the minimum amount in controversy.  We affirm.

## I. Facts & Background

On January 1, 2005, Abdel-Aleem began consulting for Biopure Corporation (Biopure).  On August 1, 2005, Abdel-Aleem and Biopure executed an Employment Agreement Concerning the Protection of Company Property and the Arbitration of Legal Disputes (Employment Agreement).  The Employment Agreement included a provision prohibiting Abdel-Aleem from disclosing confidential or proprietary information to third parties, as well as a non-competition covenant effective during his employment with Biopure and for two years thereafter.  On July 28, 2006, after what Abdel-

---

[1] Abdel-Aleem is also suing Does 1-10, "unknown natural persons who are responsible for [his] damages."

Aleem characterizes as "fundamental differences" with Biopure's CEO, Abdel-Aleem left the company.

Beginning in January 2007, Abdel-Aleem began consulting for IKOR Life Sciences (IKOR). On June 29, 2007, Biopure filed suit against Abdel-Aleem in Massachusetts state court, alleging that in his work for IKOR, Abdel-Aleem had breached the Employment Agreement's confidentiality provision and its non-competition covenant.[2] On February 12, 2008, the state court entered a protective order limiting the use of material obtained through discovery containing confidential information or trade secrets of the plaintiff, defendant, and third parties.

Biopure filed for Chapter 11 bankruptcy in July 2009, and in September 2009, sold its assets to OPK, including its interest in the suit against Abdel-Aleem. On March 8, 2010, before OPK moved to substitute itself as plaintiff, the state court dismissed Biopure's complaint without prejudice for failure to prosecute.[3] Over the course of several months beginning in June 2010, OPK and Abdel-Aleem attempted to forge an agreement in which OPK offered to release the claims against Abdel-Aleem in exchange for any material that he had produced during discovery that was subject to the

---

[2] The suit also included claims under Massachusetts law for misappropriation of trade secrets and business information.

[3] At around the same time, in March 2010, Abdel-Aleem was diagnosed with Parkinson's disease and has since experienced a deterioration in his health.

protective order.  In turn, Abdel-Aleem requested indemnification against any potential lawsuit brought against him by IKOR.  OPK refused to so indemnify, and when the parties were unable to come to an agreement, OPK moved to substitute itself for Biopure, and Biopure moved to vacate the judgment of dismissal.  The state court granted both motions on February 25, 2011.  On March 7, 2011, Abdel-Aleem moved for summary judgment in the state court action.[4]

The next day, March 8, 2011, Abdel-Aleem filed a complaint (First Complaint) in the United States District Court for the District of Massachusetts, alleging that OPK's prosecution of the state court suit against him constituted an abuse of process under Massachusetts state law.  The suit also sought to enjoin the state court proceedings.  Abdel-Aleem claimed diversity jurisdiction.[5]  In describing his damages in his First Complaint, Abdel-Aleem stated that "the amount of [sic] controversy exceeds, exclusive of interest and costs, the amount of ($75,000), pursuant to 28 U.S.C. § 1332," that, as a result of OPK's allegedly tortious actions, "[d]amages have resulted including emotional distress,"

---

[4] On July 28, 2011, the state court granted summary judgment to Abdel-Aleem, which OPK did not oppose.  However, the state court, after hearing from OPK's counsel, denied Abdel-Aleem's motion for attorney's fees and costs, finding that neither Biopure nor OPK had prosecuted the suit in bad faith and that their claims were neither insubstantial nor frivolous.

[5] Because the issue of the minimum amount in controversy under 28 U.S.C. § 1332 is dispositive, we do not reach or discuss diversity of citizenship.

and that Abdel-Aleem "ha[d] suffered damage, loss and harm, including but not limited to his reputation, his emotional tranquility, and privacy."

On March 28, 2011, OPK moved to dismiss Abdel-Aleem's complaint. OPK first argued that Abdel-Aleem had failed to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), as OPK had never caused process to issue against him and thus could not be liable for abuse of process. Second, OPK argued Abdel-Aleem's complaint must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because Abdel-Aleem had not sufficiently supported his allegation that the amount in controversy was over $75,000, the jurisdictional minimum under 28 U.S.C. § 1332.

Thereafter, Abdel-Aleem filed an amended complaint (Amended Complaint) on April 5, 2011, reiterating the claim for abuse of process and adding claims for intentional and negligent infliction of emotional distress. This time, Abdel-Aleem alleged that the amount in controversy was "at least $1,000,000." Abdel-Aleem continued to generally allege "emotional distress." For his abuse of process claim, Abdel-Aleem again described his damages as "loss and harm, including but not limited to his reputation, his emotional tranquility, and privacy." He alleged that his damages resulting from the intentional infliction of emotional distress

-5-

claim were that OPK's conduct "caused him to lose his job, spend thousands of dollars in legal fees, and endure enormous amounts of physical and mental anguish."  Abdel-Aleem further alleged that "[n]o reasonable individual could endure the physical and mental stress that Defendants have inflicted upon [him]."  For the negligent infliction of emotional distress claim, he alleged "continued suffering of physical and emotional distress," that "[a]ny reasonable person subject to Defendants' tortious behavior would have suffered both physical and mental anguish as a result of Defendants' actions," and that OPK's conduct caused him to "suffer by forcing him to choose between two daunting alternatives": defending against the "frivolous" lawsuit or releasing confidential information.

After considering the Amended Complaint, the district court granted OPK's motion to dismiss,[6] holding that Abdel-Aleem had not "set forth sufficient facts to show that the amount in controversy exceeds the jurisdictional threshold established by 28 U.S.C. § 1332(a)."  Abdel-Aleem v. OPK Biotech LLC, No. 11-10397-RGS, 2011 WL 1304642, at *1 (D. Mass. Apr. 6, 2011). Abdel-Aleem timely appealed.

---

[6] In allowing the motion to dismiss, the district court held that Abdel-Aleem's request for an injunction was moot. Abdel-Aleem v. OPK Biotech LLC, No. 11-10397-RGS, 2011 WL 1304642, at *1 (D. Mass. Apr. 6, 2011).

## II. Discussion

We review de novo a district court's dismissal for lack of subject matter jurisdiction. Stewart v. Tupperware Corp., 356 F.3d 335, 337 (1st Cir. 2004). Abdel-Aleem attempts to establish the district court's original jurisdiction under a diversity theory, as the federal "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1).

The federal plaintiff carries the burden to establish that the minimum amount in controversy has been met. Stewart, 356 F.3d at 338. "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Id. at 338 (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 282, 288-89 (1938)). Good faith is measured objectively; "[t]he question . . . is whether to anyone familiar with the applicable law this claim could objectively have been viewed as worth" more than the jurisdictional minimum. Coventry Sewage Assoc. v. Dworkin Realty Co., 71 F.3d 1, 6 (1st Cir. 1995) (quoting Jiminez Puig v. Avis Rent-a-Car Sys., 574 F.2d 37, 40 (1st Cir. 1978)).

A plaintiff's "'general allegation of damages that meet the amount requirement suffices unless questioned by the opposing party or the court.'" Stewart, 356 F.3d at 338 (quoting Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001)). However, once the opposing party has questioned the amount, "'the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount.'" Id. (quoting Spielman, 251 F.3d at 5). This burden may be met by amending pleadings or submitting affidavits. Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991).

Here, OPK has challenged Abdel-Aleem's assertion of the amount in controversy. Thus, the burden has shifted to him to allege with "sufficient particularity" facts that in some way support the contention that there is more than $75,000 at stake. See id. at 90 (holding that the proponent of diversity jurisdiction has the "burden of supplying specific factual allegations to support the amount in controversy requirement"). In his First Complaint, Abdel-Aleem stated no amount in controversy, alleging only that it was in excess of the minimum, and gave only the most general description of his damages.[7] Even though Abdel-Aleem was

---

[7] Abdel-Aleem alleged that "[d]amages have resulted including emotional distress" and that he "ha[d] suffered damage, loss and harm, including but not limited to his reputation, his emotional

-8-

warned of OPK's opposition by its Rule 12(b)(1) motion to dismiss, he added only further generalizations to the description of his damages in the Amended Complaint,[8] which did not provide any specifics or basis for the alleged amount in controversy. See Diefenthal v. Civil Aeronautics Bd., 681 F.2d 1039, 1053 (5th Cir. 1982) (where "party invoking the court's jurisdiction" was "put on notice . . . by [the defendant's] motion to dismiss for lack of jurisdiction, that they needed to show some basis for the amount of damages they claimed," failure to do so resulted in proper dismissal by the district court).

Abdel-Aleem provided no substantiation for or valuation of any of the economic, emotional or physical damages he alleged in his Amended Complaint. In particular, though Abdel-Aleem alleged that the filing of the state court lawsuit caused him to lose his job, he set forth no facts in support of this claim. Indeed, not only did Abdel-Aleem offer no lost wages valuation, he did not even indicate what job he lost or the circumstances surrounding the loss. Similarly, Abdel-Aleem did nothing to substantiate his claim

tranquility, and privacy."

[8] In his Amended Complaint, Abdel-Aleem repeated the description of damages for his abuse of process claim from the First Complaint, and added that OPK's alleged intentional infliction of emotional distress "caused him to lose his job, spend thousands of dollars in legal fees, and endure enormous amounts of physical and mental anguish," which "[n]o reasonable individual could endure." and that their negligent infliction of emotional distress caused "continued suffering of physical and emotional distress."

for legal fees.  While attorney's fees are normally excluded from an amount in controversy determination absent a statute or contract providing for such fees, see Spielman, 251 F.3d at 7, fees for defending the underlying lawsuit in a Massachusetts abuse of process action are considered compensatory damages and not attorney's fees, see Millennium Equity Holdings, LLC v. Mahlowitz, 925 N.E.2d 513, 528 (Mass. 2010).  Thus, Abdel-Aleem's claim for legal fees is part of our amount in controversy analysis.  That being said, he gave us nothing to go on other then to say that he spent "thousands of dollars."  This does not qualify as sufficient particularity.[9]  See, e.g., Dep't of Recreation, 942 F.2d at 90 (finding that because plaintiff failed to include an estimate of attorney's fees on the record, there was no basis for the court to conclude that the amount in controversy requirement had been met).  As for Abdel-Aleem's claims of physical and mental anguish, he speaks only in general terms (mainly parroting the elements of the torts he alleges) and offers no particulars, either facts or numbers, from which we can glean that there is more than $75,000 at stake.

Abdel-Aleem's lack of substantiation contrasts with our cases upholding diversity jurisdiction on the basis of the minimum

---

[9] We do not go so far as to say that a plaintiff, responding to a challenge to the amount in controversy, must always set forth the specific amount of attorney's fees claimed.  However, based on the facts at hand, the phrase "thousands of dollars" (which denotes a vast range of amounts) is not sufficient.

amount in controversy.  See, e.g., Stewart, 356 F.3d at 338 (in response to defendant's challenge to amount in controversy, plaintiffs met burden by supplying written interrogatories and multiple medical reports describing and documenting injuries); Hardemon v. City of Boston, 144 F.3d 24, 26 (1st Cir. 1998) (amount in controversy was sufficiently established based on affidavit attached to amended complaint itemizing lost wages and other damages claimed).  While we do not suggest that Stewart and Hardemon set the minimum standard for establishing the amount in controversy when it is challenged, we expect something more than bald statements and round numbers.

Abdel-Aleem's amendment adding "at least $1,000,000" as the alleged amount in controversy, which the district court described as "what appears to be an imaginary number," does not help him meet his burden. Abdel-Aleem, 2011 WL 1304642, at *1 n.1. While we must "give due credit to the good faith claims of the plaintiff, a court would be remiss in its obligation if it accepted every claim of damages at face value . . . . Jurisdiction is not conferred by the stroke of a lawyer's pen.  When challenged, it must be adequately founded in fact." Diefenthal, 681 F.2d at 1052. Here, Abdel-Aleem has not provided any facts or substantiation to show with sufficient particularity that his case is worth more than $75,000, let alone the claimed $1,000,000.  See Dep't of Recreation, 942 F.2d at 90 (where no specific factual allegations

-11-

were provided, the record did not show "that there [was] any amount in controversy . . . , much less one in excess of the . . . threshold").

Even if Abdel-Aleem had provided facts supporting his claimed amount in controversy with sufficient particularity, he could not meet the objective good faith standard, under which he must show that "to anyone familiar with the applicable law this claim could objectively have been viewed as worth" more than the jurisdictional minimum. Coventry Sewage, 71 F.3d at 6. Though Abdel-Aleem provides no details substantiating the value of his own claim, he attempts to establish that his claimed amount in controversy is made in objective good faith based on comparison to other similar claims. However, no case Abdel-Aleem cites is similar to his, and many of his cited cases stand for a proposition contrary to his description.

While "'federal courts must . . . look to state law to determine the nature and extent of the right to be enforced in a diversity case,'" Stewart, 356 F.3d at 339 (quoting Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 352-53 (1961)), the cases Abdel-Aleem cites have nothing to do with the extent of damages awarded in similar cases, and do not help us determine the extent or value of his rights. Some cases Abdel-Aleem cites are procedurally dissimilar and do not involve any calculation of

-12-

damages.[10]  Other cases he cites resemble OPK's state claim against him, and may define the extent of OPK's right, but have nothing to do with the value of an abuse of process or emotional distress claim.[11]

The only case Abdel-Aleem cites which is arguably similar to his claim is Brooks Automation, Inc. v. Blueshift Technologies,

---

[10] Abdel-Aleem argues that Sheldon v. Khanal, No. 07-2112-KHV, 2007 WL 4233628 (D. Kan. Nov. 10 2007), "affirmed plaintiffs' subject matter jurisdiction with respect to the Abuse of Process Count" based on general damages estimates; in fact, the court in Sheldon was willing only to give preliminary consideration to the abuse of process claim (as opposed to other claims which contained no damages estimates at all and which the court disregarded outright) before ordering the plaintiff to show cause as to why the claim should not be dismissed as a matter of law.  Id. at 14-15. Abdel-Aleem relies on Bala v. AOtec, Inc., No. 942623A, 1998 WL 1184165 (Mass. Super. Ct. June 2, 1998), for the proposition that a party asserting an abuse of process counterclaim "prevailed" and that "damages exceeded $75,000."  In Bala, the party "prevailing" was able to defeat a motion for summary judgment and proceed to trial, but damages were nowhere mentioned by the court.  Id. at *5.

[11] Abdel-Aleem relies on Aspect Software, Inc. v. Barnett, 787 F. Supp. 2d 118 (D. Mass. 2011), to argue that one may, under Massachusetts law, plead punitive damages for violation of a non-competition agreement.  Not only is Abdel-Aleem's present abuse of process claim entirely dissimilar, Aspect Software nowhere mentions punitive damages.  Rather, the case revolves around whether the court will issue a preliminary injunction.  This citation does not in any way add to this court's understanding of the nature and extent of the right Abdel-Aleem seeks to vindicate.  Another case Abdel-Aleem cites, Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1 (1st Cir. 2009), similarly resembles OPK's state case against him (albeit analyzing Rhode Island law), but is totally inapposite to his claim here.  The same is true of D.L. Anderson's Lakeside Leisure Co. v. Anderson, 757 N.W.2d 803, 820-24 (Wis. 2008), another case involving a claim similar to OPK's state case, where the Wisconsin Supreme Court held punitive damages were appropriate in the context of a violation of a non-competition agreement.

Inc., No. 05-3973-BLS2, 2006 WL 307948 (Mass. Super. Ct. Jan. 24, 2006). Abdel-Aleem offers Brooks Automation as an example of a Massachusetts state case where a claim that the court deemed similar to abuse of process resulted in an award of $627,900. Id. at *3. However, even assuming the abuse of process claim Abdel-Aleem brings here is identical to the Chapter 93A claim for tortious interference with business relations brought in Brooks Automation,[12] the type of award sought makes Brooks Automation distinguishable. The award there was based on a specific unpaid invoice, entirely dissimilar from that sought by Abdel-Aleem, which would be largely for emotional and physical suffering. Id. at *4. Therefore, because he has not made any arguments that help us define the nature and extent of his right, Abdel-Aleem has failed to make an adequate showing of objective good faith behind his allegation that his claim is worth more than $75,000, let alone $1,000,000.

Saint Paul Mercury's standard for justifying dismissal, that "[i]t must appear to a legal certainty that [a plaintiff's] claim is really for less than the jurisdictional amount," might at

---

[12] Abdel-Aleem asserts that, if his case is remanded, he will seek to amend his complaint to add a claim under Mass. Gen. Laws ch. 93A. However, as we determine the amount in controversy from the "face of the pleadings" that were before the district court, Coventry Sewage, 71 F.3d at 5 (quoting St. Paul Mercury, 303 U.S. at 289), we do not consider the possibility of a Chapter 93A claim here. See also Dep't of Recreation, 942 F.2d at 89 (where claim is not spelled out in the pleadings, court will not consider it in the amount in controversy determination).

-14-

first seem like a high threshold. <u>Stewart</u>, 356 F.3d at 338 (quoting <u>St. Paul Mercury</u>, 303 U.S. at 289). However, it is still our duty "to police the border of federal jurisdiction." <u>Spielman</u>, 251 F.3d at 4. Where the opposing party has contested the alleged amount in controversy, the "sufficient particularity" standard requires something more than a plaintiff's conclusory statements. Here, Abdel-Aleem was given the opportunity to amend his complaint, but he still provided no factual support as to the value of his claim. Further, in his argument before this court, he has not provided any relevant case law from which we could determine his objective good faith. We therefore affirm the district court's dismissal for lack of subject matter jurisdiction.

## III. Conclusion

Finding no error in the district court's determination that the amount in controversy requirement was not met, we <u>affirm</u>.