Bradford LUCAS, on behalf of himself and others similarly situated, Plaintiffs,

v.

ULTIMA FRAMINGHAM LLC, and Ultima Skokie Management LLC, d/b/a Sheraton Framingham Hotel & Conference Center, Defendants.

C.A. No. 1:12–cv–12380–MLW.

United States District Court, D. Massachusetts.

Sept. 27, 2013.

Hillary A. Schwab, Fair Work, P.C., Shannon E. Liss–Riordan, Lichten & Liss–Riordan, P.C., Boston, MA, for Plaintiffs.

Jessica Schauer Lieberman, Ariel D. Cudkowicz, Seyfarth Shaw, LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

## I. INTRODUCTION

On November 20, 2012, plaintiff Bradford Lucas ("Lucas") filed a three-count complaint in Middlesex Superior Court against defendants Ultima Framingham LLC and Ultima Skokie Management LLC, doing business as the Sheraton Framingham Hotel and Conference Center. The complaint, filed on behalf of both Lucas and a putative class consisting of his fellow waitstaff, alleges that the defendants failed to distribute to the waitstaff the full amount of their gratuities, in violation of provisions of Massachusetts General Laws chapters 149 and 151. The complaint also alleges that, in violation of Massachusetts General Laws chapter 149, section 148A, the defendants fired Lucas in retaliation for his complaints about these practices. The complaint requests various forms of relief: restitution for gratuities not distributed to waitstaff; restitu-tion for minimum wage not provided to employees; injunctive relief; restitution for Lucas' lost wages following his termination; treble damages; attorneys' fees and costs; pre- and post-judgment interest; and any other relief to which the plaintiffs might be entitled.

On December 20, 2012, the defendants filed a timely notice of removal pursuant to 28 U.S.C. §§ 1441 and 1446, stating that this court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. On December 27, 2012, the defendants also filed their Answer to Complaint.

On January 18, 2013, pursuant to 28 U.S.C. § 1447(c), Lucas timely filed a motion to remand (the "Motion"), arguing that the amount-in-controversy requirement of 28 U.S.C. § 1332(a) has not been met. The defendants oppose the Motion, contending that Lucas' claims would, if successful, likely yield more than $75,000 in damages and attorneys' fees.

For the reasons described below, the plaintiff's motion to remand to state court is being denied. Therefore, a conference to establish a schedule for this case will be held on October 23, 2013.

## II. LEGAL STANDARDS

### A. *Removal and Remand*

When a plaintiff brings suit in state court and asserts a state-law cause of action, the defendant is entitled to remove the suit to United States district court if two conditions are both satisfied. First, the opposing parties must have complete diversity of citizenship, which requires that no plaintiff may be a citizen of any state of which any defendant is also a citizen. *See* 28 U.S.C. § 1332(a)(1, 2). Second, the amount in controversy must "exceed[ ] the

sum or value of $75,000, exclusive of interest and costs." *Id.* § 1332(a). If these two conditions are met, a defendant may remove the case to federal court. *Id.* § 1446(a).

Once a defendant has removed a case to federal court under 28 U.S.C. § 1446, however, the plaintiff may file a motion to remand the case to state court because of a lack of federal subject matter jurisdiction. *See id.* § 1447(c). Even absent such a motion, the district court itself has a duty to decide whether subject matter jurisdiction exists. *See id.* ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Am. Policyholders Ins. Co. v. Nyacol Prods.*, 989 F.2d 1256, 1258 (1st Cir.1993).

### B. *Burden of Proof*

 When the plaintiff challenges removal based upon diversity jurisdiction, the defendant bears the burden of demonstrating that the removal is permissible. *See, e.g., Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 366 (1st Cir.2001). This burden extends to both the requirement of diversity of citizenship and the requirement that the amount in controversy exceeds $75,000. *See Williams v. Litton Loan Servicing*, C.A. No. 10–11866–MLW, 2011 WL 3585528, at *5 (D.Mass. Aug. 15, 2011).

The First Circuit has held that a defendant must prove diversity of citizenship by a preponderance of the evidence. *See Francis v. Goodman*, 81 F.3d 5, 6 (1st Cir.1996). The burden for proving that the amount in controversy exceeds $75,000 has not been decided by the First Circuit, but the majority position in federal courts is that the defendant must also prove the amount in controversy by a preponderance of the evidence. *See Toglan v. Marriott Int'l. Inc.*, C.A. No. 10–10954–MLW, 2011

WL 3625270, at *3 (D.Mass. Aug. 15, 2011) (collecting cases).

Although the First Circuit has not decided the defendant's burden for proving that the amount in controversy exceeds $75,000, in analogous cases it has indicated that it would employ either the preponderance standard or its functional equivalent. For example, in *Amoche v. Guarantee Trust Life Insurance Co.*, 556 F.3d 41 (1st Cir. 2009), the First Circuit held that to establish federal jurisdiction in a class action suit removed pursuant to the Class Action Fairness Act ("CAFA"), "the removing defendant must show a *reasonable probability* that the amount in controversy exceeds $5 million," the amount required for federal jurisdiction under CAFA. *Id.* at 43 (emphasis added). The court proceeded to explain that "the reasonable probability standard is ... for all practical purposes identical to the preponderance standard adopted by several circuits." *Id.* at 50.

This court has previously addressed the appropriate standard. In *Toglan v. Marriott International, Inc.*, C.A. No. 10–10954–MLW, 2011 WL 3625270 (D.Mass. Aug. 15, 2011), it considered the majority position among federal courts, as well as analogous First Circuit precedent, in adopting and applying the preponderance standard to a suit similar to the instant case. *See id.* at *3–4. This court also applied the preponderance standard in *Williams v. Litton Loan Servicing*, C.A. No. 10–11866–MLW, 2011 WL 3585528, at *5 (D.Mass. Aug. 15, 2011), and *Arrigo v. Scholarship Storage, Inc.*, C.A. No. 10–11650–MLW, 2011 WL 3584715, at *4 (D.Mass. Aug. 10, 2011). This position has found support elsewhere within the First Circuit. *See, e.g., Evans v. Yum Brands, Inc.*, 326 F.Supp.2d 214, 219–20 (D.N.H. 2004) ("[W]here ... the complaint does not put any number on the plaintiff's claimed damages, this court has required the de-

fendant to show by a preponderance of the evidence that the amount in controversy exceeds the figure necessary for federal diversity jurisdiction.").

In view of the foregoing, the court again concludes that once the plaintiff has challenged removal to federal court, the defendant must prove by a preponderance of the evidence that the amount-in-controversy requirement is satisfied. In other words, here defendants must now prove that it is more likely than not that if Lucas prevails on his claims against them, he will be entitled to recover more than $75,000.

### C. Calculation of the Amount in Controversy

In attempting to prove the jurisdictional amount, "[a] party may meet [its] burden by amending the pleadings or submitting affidavits." *Dep't of Recreation and Sports of P.R. v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir.1991).

In calculating the amount in controversy, a federal court must examine relevant state law to determine the nature and extent of the damages which may be awarded. *See Stewart v. Tupperware Corp.*, 356 F.3d 335, 339 (1st Cir.2004); *Evans*, 326 F.Supp.2d at 220–21. Importantly, "[w]hen a plaintiff makes a claim under a statute including a damage multiplier, a court must apply that factor in evaluating the amount in controversy." *Evans*, 326 F.Supp.2d at 222; *see also Rosen v. Chrysler Corp.*, 205 F.3d 918, 922 (6th Cir.2000); *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 (9th Cir.2000); *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir.1998). In addition, a court must take into account attorneys' fees where, as here, the award of those fees is statutorily authorized. *See Spielman v. Genzyme Corp.*, 251 F.3d 1, 6 (1st Cir.2001).

## III. ANALYSIS

There is no dispute about the diversity of the parties. In arguing for remand, plaintiff addresses only the amount in controversy in this case. Therefore, the court accepts that Lucas is a citizen of the Commonwealth of Massachusetts, and Ultima Framingham LLC and Ultima Skokie LLC are citizens of both Delaware, their state of incorporation, and Illinois, the location of their principal places of business. *See* 28 U.S.C. § 1332(c)(1) (defining corporate citizenship for purposes of diversity jurisdiction). Accordingly, there is complete diversity between Lucas and the defendants.

The sole issue to be decided is whether the jurisdictional amount has been satisfied. More specifically, the question is whether the defendants have proven, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.

If Lucas' claims are successful, he will be entitled not only to actual damages, but also to treble damages and attorneys' fees for all three alleged violations. *See* Mass. Gen. L. ch. 149, § 150 (specifying that in service charge and unlawful termination actions, "an employee . . . who prevails in such an action *shall* be awarded treble damages, as liquidated damages, for any lost wages and other benefits and shall also be awarded the costs of litigation and reasonable attorneys' fees" (emphasis added)); Mass. Gen. L. ch. 151, § 20 (specifying that for minimum wage actions, "an employee . . . who prevails in such an action *shall* be awarded treble damages, as liquidated damages, for any loss of minimum wage and shall also be awarded the costs of the litigation and reasonable attorneys' fees" (emphasis added)). As explained earlier, these statutory provisions must be taken into account in calculating the amount in controversy. *See Rosen*, 205 F.3d at 922 (damages multipliers);

*Chabner,* 225 F.3d at 1046 (same); *Miera,* 143 F.3d at 1340 (same); *Evans,* 326 F.Supp.2d at 222 (same); *Spielman,* 251 F.3d at 6 (attorneys' fees). Therefore, if the defendants can now show that if plaintiff prevails he is likely to be entitled to actual damages of more than $25,000—which would become more than $75,000 after the statutory trebling—they will have shown that this case meets the amount-in-controversy requirement.

Although no party has submitted any evidence indicating the extent of either the defendants' alleged withholding of wait-staff gratuities or the defendants' alleged failure to comply with state minimum wage laws, there is evidence in the record concerning the magnitude of potential damages if Lucas prevails on his claim that he was unlawfully terminated. The defendants have submitted an affidavit that includes a copy of Lucas' final pay stub, which shows that during the course of his employment by the defendants Lucas earned $12,592.40 in gross income. Opp'n to Mot. to Remand Ex. 1, at 4. In the instant motion, Lucas notes that he "worked for Defendants from July to October 2012, for a total period of approximately two and a half months." [1] Pl.'s Mot. to Remand and Memo. in Supp. Thereof at 3. Dividing Lucas' gross income by the time he worked for defendants indicates that he earned more than $5,000 per month.

In *Arrigo v. Scholarship Storage, Inc.,* C.A. No. 10–11650–MLW, 2011 WL 3584715 (D.Mass. Aug. 10, 2011), this court agreed with the approach adopted in the District of New Hampshire in *Lowe v. Sears Holding Corp.,* 545 F.Supp.2d 195 (D.N.H.2008), for calculating the amount in controversy for removal in wrongful termi-

nation actions. As the court in *Lowe* noted:

Though the amount in controversy in a case removed to federal court depends on the circumstances existing at the time of removal, *see Magerer v. John Sexton & Co.,* 912 F.2d 525, 529 (1st Cir.1990), the calculation includes monies not yet due the plaintiff at that point—so long as the "judgment will clearly and finally create an obligation to pay, over a number of years, a sum in excess of the jurisdictional amount, even though future events may alter or cut off the defendant's obligation." 14B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice & Procedure* § 3702, at 87 (3d ed. 1998). The amount in controversy in a wrongful discharge suit, then, includes what the plaintiff would have earned but for the termination of his employment, even if those sums had not yet become due at the time of removal. *See Hardemon v. City of Boston,* 144 F.3d 24, 26–27 (1st Cir.1998); *see also White v. FCI USA, Inc.,* 319 F.3d 672, 675–76 (5th Cir.2003).

*Lowe,* 545 F.Supp.2d at 196. The court continues to believe that this is correct. Therefore, in evaluating the amount in controversy for Lucas' wrongful termination claim, it is necessary to include the estimated recovery on that claim if the plaintiff prevails as of time the case was removed.

■ The Notice of Removal was filed on November 20, 2012, about two months after the defendants terminated Lucas' employment. The estimated value of Lucas' back pay to that date would, therefore, be about $10,000, which even if trebled would not satisfy the amount-in-controversy requirement. However, for an unlawful ter-

---

1. Presumably, some of Lucas' employment by defendants was intermittent during the period from July to October. For the amount-in-controversy analysis, the court must take the plaintiff's assertions at face value.

mination claim, the damages for back pay are calculated from the date of termination to the date of judgment. *Cf. McCarthy v. Bank of N.Y./Mellon*, 2010 WL 2144241, at *1 (D.Mass.2010) (discussing back pay calculations for amount in controversy in diversity suit based upon termination in violation of another statute, Massachusetts General Laws chapter 151B). Therefore, it is necessary to determine the expected duration of litigation in deciding the overall amount in controversy.[2]

The experience in prior comparable cases informs the court's decision about the likely duration of this litigation. This court has previously noted that for purposes of determining the jurisdictional amount, "[e]very case is unique," *Toglan*, 2011 WL 3625270, at *4. However, this does not imply that it is inappropriate to draw fair inferences from prior litigation.

The court has little information about the duration of cases alleging unlawful termination in violation of Massachusetts General Laws chapter 149, section 148A. However, the plaintiff has provided information on the duration of litigation in Massachusetts state-court cases involving the other counts in this case, which allege violations of the service charge and minimum wage laws. *See* Pl's Mot. to Remand and Memo. in Supp. Thereof at 3 n. 2. In the cases plaintiff cites, the parties reached settlements after litigation rang-

ing from eight months to two years. *Id.* These cases would have taken longer had they been litigated to a final judgment. Therefore, information before the court suggests that at the time of removal it would have been reasonable to expect that this case would continue for eight months to several years.

■ As described earlier, the evidence indicates that Lucas' earnings were about $5,000 per month. After five months of litigation he would be entitled to actual damages of $25,000 if he prevails on his wrongful termination claim. After eight months he would be entitled to $40,000 in actual damages. In view of the trebling required by Massachusetts General Laws chapter 149, section 150, the amount in controversy at the time of removal was, therefore, in excess of $75,000.[3]

■ Plaintiff argues, however, that the amount-in-controversy analysis should account for any potential reduction in the amount of damages to be awarded because of plaintiff's effort to mitigate his loss. However, affirmative defenses are not included in this calculus. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("[T]he fact that it appears from the face of the complaint that the defendant has a valid defense, if asserted, to all or a portion of the claim ... will not justify

**2.** In reaching this conclusion, the court is guided by the First Circuit's decision in *Hardemon*, 144 F.3d at 24. The plaintiff argues that *Hardemon* is inapposite to the present analysis because in that case, the First Circuit "did not provide any analysis or discussion regarding the propriety of considering back pay that had not yet accrued when calculating the amount in controversy for the purposes of remand." Reply in Supp. of Pl.'s Mot. to Remand at 5. However, in *Hardemon* the court implicitly affirmed the propriety of such a consideration by finding that the plaintiff, whose monthly earnings were only $1,980, and who had been fired at most five months

prior to removal, had a claim whose potential value exceeded the $50,000 jurisdictional requirement at the time. *See Hardemon*, 144 F.3d at 25–26.

**3.** Even using the defendants' more conservative $4,000 per month estimate of Lucas' earnings, Opp'n to Mot. to Remand at 5, final judgment would have to have been expected within about six months of Lucas's termination to fall short of the $75,000 amount-in-controversy requirement. The evidence indicates that this was improbable.

remand."). The burden of proving a failure to mitigate damages falls upon the defendant. *See Thurber v. Jack Reilly's Inc.*, 521 F.Supp. 238, 241–42 (D.Mass. 1981). Therefore, it is most appropriate not to reduce the calculated amount in controversy for any potential reduction in the amount of damages that might result from plaintiff's earnings after his termination. Moreover, plaintiff has not provided any evidence of earnings after he was terminated. Therefore, the court would have no basis on which to reduce the potential award to him if an offset for post-termination earnings was permitted.

Because the court finds that the unlawful termination claim alone had a potential value exceeding $75,000 at the time of removal, there is no need to consider the amount in controversy under Claims I and II. Nor is there any need to consider the amount of attorneys' fees that must be awarded if plaintiff prevails in this case. *See* Mass. Gen. L. ch. 149, § 150; Mass. Gen. L. ch. 151, § 20. However, these additional amounts reinforce the conclusion that more than $75,000 was in controversy when this case was removed.

In view of the foregoing, the court concludes that the defendants have satisfied their burden of proving, by a preponderance of the evidence, that the amount in controversy in this case exceeds $75,000. Therefore, the motion to remand is not meritorious.

1. These sections of Local Rule 16.1 provide:

(B) *Obligation of counsel to confer.* Unless otherwise ordered by the judge, counsel for the parties shall, pursuant to Fed.R.Civ.P. 26(f), confer no later than twenty-one (*21*) days before the date for the scheduling conference for the purpose of:

(1) preparing an agenda of matters to be discussed at the scheduling conference,

(2) preparing a proposed pretrial schedule for the case that includes a plan for discovery, and

## IV. ORDER

Accordingly, it is hereby ORDERED that:

1. Plaintiff's Motion for Remand to State Court (Docket No. 13) is DENIED.

2. A scheduling conference shall be held on October 23, 2013, at 4:00 p.m. The parties shall comply with the attached Order concerning that conference.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

*Bradford Lucas, on behalf of himself and others similarly situated*

v

*Ultima Framingham LLC and Ultima Skokie Management LLC, d/b/a Sheraton Framingham Hotel & Conference Center*

CIVIL ACTION NO. *12–cv–12380–MLW*

### NOTICE OF SCHEDULING CONFERENCE/MOTION HEARING

An initial scheduling conference will be held in Courtroom No. 10 on the 5 floor at 4:00 p.m. on October 23, 2013, in accordance with Fed.R.Civ.P. 16(b) and Local Rule 16.1. The court considers attendance of the senior lawyers ultimately responsible for the case and compliance with sections (B), (C), and (D) of Local Rule 16.1 [1]

(3) considering whether they will consent to trial by magistrate judge.

(C) *Settlement proposals.* Unless otherwise ordered by the judge, the plaintiff shall present written settlement proposals to all defendants no later than ten (10) days before the date for the scheduling conference. Defense counsel shall have conferred with their clients on the subject of settlement before the scheduling conference and be prepared to respond to the proposals at the scheduling conference.

(D) *Joint statement.* Unless otherwise ordered by the judge, the parties are required to

to be of the utmost importance. Counsel may be given a continuance only if actually engaged on trial. Failure to comply fully with this notice and with sections (B), (C), and (D) of Local Rule 16.1 may result in sanctions under Local Rule 1.3. Counsel for the plaintiff is responsible for ensuring that all parties and/or their attorneys, who have not filed an answer or appearance with the court, are notified of the scheduling conference date.

Date

United States District Judge

By:

Deputy Clerk

file, no later than five (5) business days before the scheduling conference and after consideration of the topics contemplated by Fed. R.Civ.P. 16(b) and 26(f), a joint statement containing a proposed pretrial schedule, which shall include:

(1) a joint discovery plan scheduling the time and length for all discovery events, that shall

(a) conform to the obligation to limit discovery set forth in Fed.R.Civ.P. 26(b), and

(b) take into account the desirability of conducting phased discovery in which the first phase is limited to developing information needed for a realistic assessment of the case and, if the case does not terminate, the second phase is directed at information needed to prepare for trial; and

(2) a proposed schedule for the filing of motions; and

(3) certifications signed by counsel and by an authorized representative of each party affirming that each party and that party's counsel have conferred:

(a) with a view to establishing a budget for the costs of conducting the full course—and various alternative courses—of the litigation; and

(b) to consider the resolution of the litigation through the use of alternative dispute resolution programs such as those outlined in Local Rule 16.4.

To the extent that all parties are able to reach agreement on a proposed pretrial schedule, they shall so indicate. To the extent that the parties differ on what the pretrial schedule should be, they shall set forth separately the items on which they differ and indicate the nature of that difference. The purpose of the parties' proposed pretrial schedule or schedules shall be to advise the judge of the parties' best estimates of the amounts of time they will need to accomplish specified pretrial steps. The parties' proposed agenda for the scheduling conference, and their proposed pretrial schedule or schedules, shall be considered by the judge as advisory only.